## STATE v. SANDERS.

CHARGE—LARCENY—HORSE.—Charge complained of held not to be on
    the facts, but simply illustrative of the difference between the crimes
    of stealing a horse and riding one off without knowledge or consent
    of owner.

Before BENET, J., Sumter, June, 1899.    Affirmed.

Indictment against John Sanders for stealing a horse.
The Judge instructed the jury as follows:

This is a case purely of fact for you to decide, with per-
haps a little comment on the law applicable to the case.
Counsel for the defendant hands up this request to charge:
"In coming to a conclusion, the jury should consider all
the facts and circumstances growing out of the evidence,
and if the jury believe that the defendant knowingly and
wilfully took and used the horse without the consent of the
owner, and without intent to steal the same, the jury should
acquit the defendant; and the defendant is entitled to every
reasonable doubt arising from the evidence."    That is the
law.    That simply means this: that if the jury don't believe
that he meant to steal the horse, you must acquit him.    If
he did not steal the horse, find him not guilty.    If he has
been proven beyond a reasonable doubt to have stolen the
horse,-then you find him guilty.    There is a reference here
in this request to charge to a statute which provides punish-
ment for those people who take and use the horse or mule
of another, and ride them off without the owner's consent,
and turn them loose, without any intent to steal.    The

statute was framed to punish those who do that. It was such a common thing for a man's laborers to take the stock of his employer and ride them off and use them, and then bring them back or turn them loose. It was to prevent people from taking and riding stock of others off, making use of them on some junketing trip, picnic or meeting, and turn the stock loose, and thus plainly showing that there was no intention to steal it. That statute was framed to prevent such unauthorized use of a horse or mule. It is a very proper statute. And if you come to the conclusion that all that this man did was to take the horse and use it, not with the intention of stealing it, you must acquit him, because the intent is the essence of the offense. It does not mean, as the counsel for the defense argued to you, that if the man took the horse and rode it off, and turned it loose, you must acquit him. A man can take a horse and then turn him loose for a very good reason—because his pursuers are hot after him, and he then turned the horse loose. The essence of the offense is not what was done after the taking of the horse, but with what intent was the horse taken, at the time he was taken. The definition of larceny is the stealing, taking and carrying away of the personal property of another, with the intent to convert it to one's own use. The first thing is the intent. With what intent did he take the property? Was it with the purpose of converting it to his own use, or did he intend to just use it, and then return it to the owner? With what intent was the property taken? If the jury are satisfied—if it has been proven to the satisfaction of the jury that this man did steal, take and carry away the property—if that has been proven to the satisfaction of the jury, beyond a reasonable doubt—you must convict him.

In this case, as I take the argument of the defendant's counsel—statements made by him—everything alleged by the State is admitted except the stealing. He admitted that he took and carried away the property, but does not admit that he stole the property. You are the judges of that. You are to say whether the intent was to steal or not.

Counsel argues something about, I believe, the mental capacity of the defendant. Mr. Purdy said something about a fit of epilepsy. Of course, it is a defense in a criminal case to set up irresponsibility because of unsoundness of mind. And if the jury are satisfied from the evidence that the man was unsound of mind and was not responsible for his acts, you would have to acquit him. You are to say if there is evidence before you to justify that as a defense in this case. The test is not whether a man has had epilepsy or not, but does he know right from wrong.

You take the testimony and decide whether or not the State has proven beyond reasonable doubt that this man is guilty of horse stealing—if so, you convict him; if not, you acquit him. The defendant is entitled to the benefit of all reasonable doubt. The State must prove its case beyond all reasonable doubt. The form of your verdict will be guilty or not guilty. Take the record and find your verdict.

From verdict of guilty and sentence thereon, defendant appeals.

*Messrs. Purdy & Reynolds,* for appellant, cite: 51 S. C., 453.

*Solicitor Wilson,* contra.

February 16, 1900. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The defendant was indicted for, and convicted of, the offense of horse stealing, and having been duly sentenced, appealed to this Court upon the two grounds set out in the record. Inasmuch as both of these exceptions impute error to the Circuit Judge in his charge to the jury, by violating that provision of the Constitution which forbids a Judge from charging upon the facts, it is due to his Honor, Judge Benet, that his charge should be fully set out by the reporter in his report of this case, as it seems to us that the charge fully vindicates itself.

The first exception complains of error on the part of the Circuit Judge in that, after charging defendant's request as follows: "In coming to a conclusion, the jury should consider all the facts and circumstances growing out of the evidence, and if the jury believe that the defendant knowingly and wilfully took and used the horse without the consent of the owner, and without intent to steal the same, the jury should acquit the defendant; and the defendant is entitled to every reasonable doubt arising from the evidence," he made the following comments: "That simply means this, that if the jury don't believe that he meant to steal the horse, you must acquit him. If he did not steal the horse, find him not guilty. If he has been proven, beyond a reasonable doubt, to have stolen the horse, then you find him guilty. There is reference here, in this request to charge, to a statute which provides punishment for those people who take and use the horse or mule of another, and ride them off without the owner's consent, and turn them loose, without any intent to steal. The statute was framed to punish those who do that. It was such a common thing for a man's laborers to take the stock of his employer and ride them off and use them, and then bring them back or turn them loose. It was to prevent people from taking and riding stock of others off, making use of them on some junketing trip, picnic or meeting, and turn the stock loose, and thus plainly showing that there was no intention to steal it. That statute was framed to prevent such unauthorized use of a horse or mule." It is impossible for us to conceive how these comments of the Circuit Judge upon defendant's request to charge can be regarded as a charge upon the facts in this case. Inasmuch as the fact that the defendant had taken the horse of another without his consent, and rode him off, was undisputed, the contention below was that while the defendant might be convicted for a violation of the act of 1883—18 Stat., 434, now incorporated in the Criminal Statutes—2 Rev. Stat. of 1893, as section 170, yet he should not be convicted under section 146 of the Criminal Statutes of the offense charged, because of

the absence of an intent to steal, which was the essence of the offense charged. It was, therefore, not only proper, but necessary, that the Circuit Judge should explain to the jury the difference between the two statutes—and this is all that his comments amount to. What he said about turning the horse loose was a mere illustration of the meaning of section 170, and certainly could not have any reference to the facts of this case, as it was not, and could not be pretended that the defendant had turned the horse loose, for the undisputed fact was that when he reached Bell's Mill, where a meeting of colored people was being held, he hitched the horse by the roadside, and laid down by the fire and went to sleep. The first exception must, therefore, be overruled.

The second exception imputes error to the Circuit Judge, in using, in his charge to the jury, the following language: "It does not mean, as the counsel for defendant argued to you, that if the man took the horse and rode it off, and turned it loose, you must acquit him; a man can take a horse and then turn him loose for a very good reason—because his pursuers are hot after him, and he then turned the horse loose," which it is claimed "was charging upon the facts and invading the province of the jury, who are the sole judges of the facts submitted to them, without any intimation as to why this particular defendant might have turned this horse loose." This exception, based as it is upon an isolated extract from the Judge's charge, cannot be properly understood without looking at the context—by reading what immediately preceded and what immediately followed the language used in the extract upon which the second exception is based. The Judge after explaining to the jury, in the language quoted in the first exception, the object and purpose of the statute (sec. 170 of Crim. Stat.), making it a misdemeanor for any person to knowingly and wilfully take and use any horse, mare or mule, without the consent of the owner thereof, and without intent to steal the same, proceeded as follows: "It is a very proper statute. And if you come to the conclusion that all that this man did was to take

the horse and use it, not with the intention of stealing it, you must acquit him, because the intent is the essence of the offense." Then follows the language used in the extract upon which the second exception is based, which is immediately followed by the following language: "The essence of the offense is not what was done after the taking of the horse, but with what intent was the horse taken at the time he was taken." This certainly was no charge upon the facts and no invasion of the province of the jury; for, as we have said above, there was no testimony tending to show that the defendant had turned the horse loose, and hence what was said upon that subject could not possibly have had any reference to any testimony in the case, but was said merely to illustrate the proper construction of the two statutes. The second exception must be overruled.

The judgment of the Circuit Court is affirmed.