## BROWN v. THE STATE.

1. Where under the facts of the case it is proper to give to the jury the definition of a principal in the second degree, it is not cause for a new trial to give the whole of such definition, as contained in the Penal Code, although the portion thereof in reference to a constructive presence at scene of a crime may not be applicable to the facts of the particular case.

2. There was evidence which authorized the court to give to the jury the definition of a principal in the second degree.

3. Upon the trial of one jointly indicted with others for murder, when one of the contentions of the State was that the defendant on trial, if not the actual perpetrator of the crime, was present at its commission, aiding and abetting A, one of the persons jointly indicted, when A fired the shot which killed the deceased; while the contention of the defendant was that he was neither acting in concert with A nor present at the scene of the homicide when A fired the fatal shot, it was error for the court to instruct the jury: "You have a right to consider how long a time elapsed from the time the fatal shot was fired . . before [the defendant] was in the immediate presence of [A] and with his gun or pistol was aiding and abetting [A] to take the life of the deceased." This charge was erroneous for the reason that it was an expression of opinion by the court upon a disputed issue of fact in the case.

Argued April 17,—Decided May 11, 1906.

Indictment for murder. Before Judge Spence. Calhoun superior court. February 22, 1906.

*W. D. Sheffield* and *R. R. Arnold,* for plaintiff in error.

*John C. Hart, attorney-general, W. E. Wooten, solicitor-general,* and *I. J. Hofmayer,* contra.

Fish, C. J: Allen Brown, Jake Brown, Will Harris, and Bob Harris were jointly indicted for the offense of murder, the person alleged to have been murdered being Bob Hawk. All of the accused were charged as principals in the first degree, it being alleged that they "unlawfully, feloniously, wilfully, and of their malice aforethought did kill and murder, by shooting with a pistol and cutting with a knife the said Bob Hawk," etc. At the trial under review, the plaintiff in error, Jake Brown, was alone tried, and was found guilty, with a recommendation that he be imprisoned in the penitentiary for life. He made a motion for a new trial, which was overruled, and he excepted.

1. The court gave to the jury the definition of a principal in the second degree, as contained in the Penal Code, §42. In the motion for a new trial, error was assigned upon this instruction, upon the ground that there was no evidence to authorize it, especially the latter portion thereof in reference to a constructive presence as distinguished from "an actual, immediate standing by, within sight or hearing of the act." We agree with counsel for plaintiff in error, that there was nothing in the evidence which would have authorized the jury to find the defendant guilty "on the idea that

he was at some convenient distance, keeping watch or guard for the real perpetrator of the crime;" but we do not think that the instruction complained of was cause for a new trial. The court merely gave the whole of the definition of a principal in the second degree, from the Penal Code; and while there was in the evidence nothing to which a part of this definition could apply, we do not think that, for that reason, the court was bound to only partially define the meaning of the term "principal in the second degree." The State did not contend that the defendant was keeping watch or guard, at some convenient distance, for the actual perpetrator of the crime, and there was nothing whatever, in the evidence, which could have led the jury to believe that he was. No sensible juror, under the circumstances, could have been misled by the fact that the court gave the whole of the definition of a principal in the second degree.

2. We do not agree with the contention that there was no evidence to authorize the court to charge upon the subject of a principal in the second degree. From the charge of the court sent up with the record, it appears that the State insisted upon two theories for a conviction. One was, that the defendant himself fired the shot which killed the deceased, and was therefore the actual perpetrator of the homicide, and, under the circumstances disclosed by the evidence, was guilty of murder. The other was, that Allen Brown, one of the parties jointly indicted with the defendant, without justification or excuse, fired the fatal shot, and the defendant, Jake Brown, was at the time present, aiding and abetting him in his effort to kill the deceased, and was therefore equally guilty of murder. There was but slight evidence to sustain this latter theory, although the trial judge devoted a considerable portion of his charge to its elucidation. From the evidence it appeared that the difficulty between Allen Brown and Bob Hawk, the deceased, arose suddenly. Allen Brown was standing at the corner of the church, near which the homicide occurred, and, upon being informed by a brother of Will Harris that Bob Hawk had cut Will Harris's coat, he followed Hawk down the road a short distance, overtook him, and provoked a difficulty with him and then shot him. There was nothing whatever in the evidence to show that Jake Brown even knew, or had any reason to believe, that Allen was going to do this; nothing whatever which even tended to show any prior con-

spiracy or concert of action between them in reference to this matter. And there was but slight evidence to show that Jake Brown had arrived upon the scene of the homicide when Allen shot the deceased. Most of the evidence strongly tended to show that Jake Brown came upon the scene after Allen Brown had ceased firing upon the deceased and was leaving the scene of the rencounter, and that then Jake Brown began to shoot at the deceased, while the latter was slowly running across a cotton patch. There was, as we have intimated, some slight evidence to sustain the theory that at the time Allen Brown shot Bob Hawk, the deceased, Jake Brown was present, aiding and abetting him in his effort to kill Hawk, but most of the evidence was the other way. The slight evidence to which we refer was the testimony of a witness named Will Smith, on cross-examination, that the "first time Allen's pistol fired, Jake was just about there, up near where Allen was." But even this witness had previously testified, on direct examination: "After Allen shot, Jake run up there. Bob Hawk had gotten ten or twelve rows in Mr. Sexton's cotton patch when Jake came up." And immediately after the statement which tended to show Jake's presence at the scene of the homicide before Allen shot the deceased, this witness testified: "At the time Jake's pistol fired, Allen had wheeled off and was coming up the road, back towards the church, and run by me. Jake was not there when Allen done the first shooting, there was a little space between the shots. . . Allen shot twice, he shot once before Bob run and once after; just after he turned his back he shot the second time."

But whether the abstract charge upon the subject of a principal in the second degree was or was not authorized as applied to the State's contention, that Allen Brown was the actual perpetrator of the crime, and that the defendant Jake Brown was present, aiding and abetting him in its commission, there was evidence from which the jury might have found that the deceased was killed either by Bob Harris, who was also jointly indicted with the defendant, or by the defendant himself, and that if he was killed by either, the other was present aiding and abetting the actual perpetrator of the homicide. There was evidence which showed that they came upon the scene of the killing about the same time and both fired a number of shots at the deceased, and it was not clear from the testimony which fired first. From the fact that they were there together and

each was endeavoring to kill the deceased while he was running across the cotton patch, the jury might have found that each was aiding and abetting the other in his efforts to murder the fleeing man; and if they found from the evidence that Bob Harris fired the fatal shot, they might have found the defendant Jake Brown guilty upon this theory. So it is clear that there was evidence in the case to which the general charge upon the law as to a principal in the second degree was applicable.

An instruction by the court upon this subject, as applied by the court to the theory that the defendant was present, aiding and abetting Allen Brown to murder the deceased, was excepted to in the motion for a new trial. Such charge was, however, not erroneous for any of the reasons assigned in this ground of the motion. In the argument before this court, this particular instruction was vigorously and forcibly attacked upon a ground not assigned in the motion for a new trial, and which we have, therefore, not taken into consideration in deciding the case.

3. Another ground of the motion was, that the court erred in charging the jury as follows: "You have a right to consider how long a time elapsed from the time the fatal shot was fired by Allen Brown, if you believe he fired it, and believe that the shot which struck him [deceased] in the temple was the fatal shot,— how long it was from the time it was fired before Jake Brown was in the immediate presence of his brother and with his gun or pistol was aiding and abetting Allen Brown to take the life of the deceased." One of the assignments of error upon this instruction was, "because it expresses the opinion of the court as to what had been proved in the case." This exception was well taken. The evidence showed that the first shot fired at the deceased was fired by Allen Brown; and one of the contentions in the case was that this was the fatal shot. The State contended that at the time Allen Brown fired this shot the defendant was present, aiding and abetting him to murder the deceased. On the other hand, the defendant contended that there was no conspiracy between himself and his brother, Allen Brown, to kill the deceased, and that he was not present when Allen was firing at the deceased and never aided and abetted him to take the life of the slain man. When the court instructed the jury that if they believed that Allen Brown fired the shot which struck the deceased in the temple, and that this was

the fatal shot, they had "a right to consider how long a time elapsed from the time the fatal shot was fired by Allen Brown . . before Jake Brown [defendant on trial] was in the immediate presence of his brother and with his gun or pistol was aiding and abetting Allen Brown to take the life of the deceased," there was, however unintentionally, an expression of opinion by the court that "Jake Brown was in the immediate presence of his brother and with his gun or pistol was aiding and abetting Allen Brown to take the life of the deceased." The court was careful to qualify the statement with reference to the fatal shot being fired by Allen Brown, with the words "if you believe he fired it, and believe that the shot which struck him [deceased] in the temple was the fatal shot," but failed to so guard the statement with reference to Jake Brown as to prevent its being taken by the jury as an expression of opinion by the court. As this was an expression of opinion upon one of the vital issues in the case, a new trial must be granted.

*Judgment reversed. All the Justices concur.*