CASE 28.—ACTION BY FOX & LOGAN AGAINST THE SOUTH-
ERN EXPRESS COMPANY FOR DAMAGES TO A
HORSE IN SHIPPING.—January 9, 1909.

# Southern Express Co. v. Fox & Logan

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment for plaintiff.     Defendant appeals.—Re-
versed.

1.  Carriers—Carriage of Goods—Limitation of Liability—Value.
    —Under Const. section 196, providing that no common carrier
    shall contract for relief from its common-law liability, a trans-
    portation contract arbitrarily fixing the value of the property
    to determine the freight and the extent of the carrier's
    liability was void.
2.  Fraud—Fraudulent Misrepresentation—Elements.—In order to
    maintain an action for deceit, the statement relied on must
    have been false, must have been made with actual or con-
    structive knowledge of its falsity, and must have actually
    misled or deceived.
3.  Carriers—Transportation of Goods—Value—Estoppel.—In an
    action against a carrier for damage to goods, a plea that
    plaintiff fraudulently stated that the property was of the
    value of $75 for the purpose of obtaining a low freight rate,
    that plaintiff knew the value of the property, and that de-
    fendant did not know, and had no means of estimating, the
    actual value, and by plaintiff's false statements defendant

was induced to assume the risks of transportation for much less than it was entitled to charge if the truth · had been stated, but which failed to show that the carrier did not know that the property was of greater value than $75, or that it was deceived and misled as to their value by plaintiff's statement, was insufficient as a plea of estoppel to prevent plaintiff from recovering more than $75 damages by reason of the carrier's negligence.

4.  Same—Loss of Property—Damages—Deceit.—A shipper may not recover the actual value of property injured by the carrier's negligence if he has deceived the carrier as to its value or practiced a fraud on the carrier with reference thereto.

5.  Same—Transportation of Animals—Injuries—Freight.—If the car stall in which a race horse was transported was reasonably safe, the carrier was not responsible for injuries to the horse in consequence of its kicking the stall loose because of fright.

6.  Same—Measure of Lliability.—A carrier is liable for injuries to animals transported to the same extent as in the case of goods except that the carrier is not liable for loss or injury resulting from the inherent nature, propensities or vices of the animals themselves.

7.  Same—Injuries to Animals—Damages.—A carrier's liability for injuries to a race horse is the difference in market value before and ·after the injury; the latter being determined in the light of the testimony as to its condition after the extent of injury has been ascertained.

### ON EXTENDED OPINION.

8.  Carriers—Transportation of Animals—Care Required—"Reasonably Safe."—A car stall in which a horse was transported by a carrier is "reasonably safe" when it is such as a person of ordinary prudence would provide.

9.  Carriers — Transportation of Animals — Care Required—Evidence.—In an action against a carrier for injuries to a horse transported by it, the carrier may show, by persons qualified to know, that the car stall was put up in the customary method of erecting stalls for the shipment of horses and that it was reasonably safe.

10.  Evidence — Declarations of Agent —Admissibility.—Declarations of an agent of a shipper of horses, in charge of the horses, made after they had reached their destination, are incompetent as substantive evidence against the shipper;

Southern Express Vo. v. Fox & Logan.

while declarations made by the agent during the transporta-
tion, and in reference theretc, are competent.

SHELBY & SHELBY for appellant.

ROBERT HARDING, E. V. PURYEAR and ALLEN & DUNCAN
for appellee.                                                        |

(No briefs, record out of office.)

OPINION OF THE COURT BY JUDGE HOBSON—Revers-
ing.

On February 21, 1905, Fox & Logan delivered to
the Southern Express Company at Donerail, Ky., 16
horses to be carried to Memphis, Tenn., in a car.
Among the horses was one called Emily Letcher,
valued at several thousand dollars. During the ship-
ment the stall in which she was placed fell down, and
she was seriously injured. They then brought this
suit against the express company to recover $2,000,
which they alleged was the amount she was damaged.
Upon a trial of the case the jury found for the plain-
tiffs the amount sued for, and the defendant appeals.

The defendant, by the third paragraph of its an-
swer, alleged that the shipper, before the contract of
shipment was made, demanded to be advised of the
rates to be charged for the carriage of the animals,
and was thereupon offered by the defendant alterna-
tive rates proportioned to the value of the animals;
that the defendant offered to transport the animals
for $254.50 if their value did not exceed $75 each, and
informed the shipper that, if the animals were worth
more than $75 each, an addition of 10 per cent of the
excess valuation over $75 would be made; that the
shipper, being asked to value the property for the
purpose of enabling the defendant to fix the freight

charges, declared that the 16 animals were of value
$75 each; that the defendant did not know and had no
means of estimating the actual value of the animals,
and was compelled to rely, and did rely, in fixing its
freight charges upon the valuation fixed by the ship-
per; that the actual value of the mare was known to
the shipper, and was unknown to it; that to procure
the reduced rate the shipper stated the mare was not
worth over $75; and that, relying upon this statement,
it undertook to transport the animal for $15, or 1-16
of the entire charge. The circuit court sustained a
demurrer to this paragraph of the answer. The de-
fendant thereupon filed an amended answer, in which
it alleged that the shipper's statement that the 16
animals were of value $75 each was falsely and fraud-
ulently made by him for the purpose of enabling him
to obtain from the defendant the low rate; that the
shipper knew the value of the animals, and knew that
the defendant did not know, and had no means of
estimating, their actual value, and that it was com-
pelled to rely and did rely in fixing its freight charges
upon the valuation as given by him; that, by reason
of the false and fraudulent statements of the shipper,
it was induced to assume and did assume,
the risks involved in the transportation of the
mare for much less than it was reasonably
entitled to charge and would have charged if the truth
had been made known to it. It pleaded that, by reason
of these facts, the plaintiffs were estopped to claim
that the mare was worth more than $75 at the time
of the shipment, or to recover more than $75 on ac-
count of her injuries. The court sustained a demurrer
to the answer as amended; and the propriety of this
ruling is the first question to be determined on the
appeal.

The Constitution provides: "No common carrier shall be permitted to contract for relief from its common law liability." Constitution sec. 196. In Adams Express Co. v. Walker, 119 Ky. 121, 83 S. W. 106, 26 Ky. L. R. 1025, 67 L. R. A. 412, this court held that under our Constitution contracts limiting the common-law liability of a carrier in this State are void. In concluding the opinion, the court said: "In the absence of a special contract, it would not be maintained that the defendant is not liable for the value of the dog lost. But our Constitution declares the contract limiting this liability void. So the contract is as though it had not been made, and the defendant is liable, unless sufficient facts are shown independently of the special contract to avoid the contract for fraud or to create an estoppel at common law." The court adheres to the rule thus laid down. The special contract is void. It is as though it had not been made, but it does not follow that the shipper may recover the value of the animal if he deceived the defendant as to the value of the animal or practiced a fraud upon him. Estoppels apply in this class of actions as in all others. The question then is: Do the allegations of the answer show facts sufficient to make out a case of deceit or to create an estoppel at common law? In the Walker case the answer did not show that the defendant relied upon the statements of the shipper, or that it was deceived by any statements that the shipper made. It is well settled that, to maintain a cause of action for deceit, the statement relied on must be false and must be made with actual or constructive knowledge of its falsity, and that it must also be shown that it actually did mislead or deceive. 14 Am. & Eng. Ency. of Law, 86, 106; 20 Cyc. 14, 32. There can be no relief for deceit unless the party com-

plaining was deceived. See Common-Law Forms, 2 Chitty, Pleading, side page 683-687. The answer in the Walker case did not show that the express company was in fact deceived by any statement made by Walker. The essentials of an estoppel are thus stated in Pomeroy's Equity, section 805: "(1) There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or, at least, the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon." The answer in the Walker case did not show that the statement of the shipper was relied on by the express company. In that case, though the dog was valued at $50, the carrier's liability was limited to $25 by the contract relied on. There was no allegation that the carrier did not know the dog was worth over $50. In fact, taking the answer as a whole, it was a plea of the special contract simply and of the estoppel arising from the contract. A shipper who makes a contract for the carriage of his goods at a reduced rate upon a low valuation fixed by himself stipulating that such valuation shall be the limit of the carrier's liability, is bound by the contract where such a contract is legal; but, where the contract is illegal, the carrier's common-law liability remains, unless the shipper deceives him or the facts

shown constitute an estoppel as above defined. If the carrier in the case at bar was not deceived as to the value of the horses, if he knew that they were worth more than $75, and yet took them to carry at the low rate, to permit him to avoid his common-law liability by pleading the contract would be in effect to treat the contract as valid. Although the carrier did not know the actual value of the horses, still, if he in fact knew that they were worth more than $75, it can not be said that he was deceived by the statement of the shipper, and no estoppel would in that event arise in his favor; for an estoppel never arises where the party pleading the estoppel knew the statement to be untrue. The answer in the case at bar does show that the carrier relied upon the statment of the shipper, and that it did not know the actual value of the animals; that the statement was made for the purpose of influencing its conduct and was fraudulently made for that purpose. But it does not show that the carrier did not know that the animals were of value more than $75, or that it was deceived or misled as to the value of the animals by the statement which the shipper made. An estoppel must be pleaded strictly. If a carrier, where he knows the property is worth more, may carry it at a reduced rate in consideration of a low valuation by the owner, and thus escape liability beyond the value, so fixed, the constitutional provision might in all cases be evaded. This is not the case of a sealed package or closed box. It was a shipment of 16 race horses. Race horses are not ordinarily sold at $75 each. A man might not know the actual value of a race horse, and yet very well know that it was worth over $75. The answer is not sufficient, but on the return of the case to the circuit court the defendant may be allowed to amend its

answer, if it desires to do so.

The defendant asked the court to give the jury this instruction: "If the jury believe from the evidence that the injury to the mare, Emily Letcher, complained of was directly and proximately caused, not by a defect in the stalling, but by her becoming frightened and in consequence of such fright, kicking loose the stalls and other appliances, they should find for the defendant." The court refused to give the instruction, and gave the jury these instructions:

"If the jury believe from the evidence that the stall in which the mare Emily Letcher was shipped, was defective in its material, or in its construction, or both, and that by reason of such defectiveness in construction or material, or both, said stall fell and by such falling caused said mare to be injured, the jury should find for the plaintiff, unless the jury believe from the evidence that said stall was caused to fall by reason of some unusually vicious or unruly propensity of said mare, and that but for such unruly or vicious propensity said stall would not have fallen.

"If the stall in which the mare, Emily Letcher, was shipped, was defective in its material or construction, but was such a stall as was reasonably safe for the shipment of horses, yet the jury should find for the defendant if the jury believe from the evidence that said mare possessed some unusually vicious or unruly propensity, and that through said propensity said stall was caused to fall when but for such propensity said stall would not have fallen."

If the stall was reasonably safe for the shipment of horses, the defendant is not responsible if the mare became frightened, and in consequence of such fright kicked loose the stall, and thus caused her injury. It was incumbent on the carrier to furnish a stall that

was reasonably safe for the shipment of horses, and, if it did this, it is not liable for an injury to the mare brought about by the act of the mare in kicking down a reasonably safe stall from fright, although the mare was not unusually vicious or of an unruly propensity. The rule is that the carrier is liable for animals just as he is for goods carried, except that he is not liable for loss or injury "resulting from the inherent nature, propensity, or proper vices of the animals themselves." L. & N. R. R. Co. v. Pedigo (Ky.), 113 S. W. 116, and cases cited. If the mare was injured by reason of the fall of the stall, the defendant is liable, unless the fall of the stall was due to the act of the mare; and, if it was due to her act, the defendant is not liable unless it furnished a stall that was not reasonably safe. A horse that is ordinarily quiet and well disposed will sometimes when frantic from fright injure himself or break down barriers reasonably sufficient. For the consequences of the act of the horse the defendant is not liable unless it failed to furnish a stall that was reasonably safe. The court on another trial will instruct the jury as above indicated. Instruction 5 is as follows: "If the jury find for the plaintiffs, they should find for them in such sum in damages, not exceeding $2.000, as is the difference between the market value of the mare, Emily Letcher, before she was injured and the market value of said mare immediately after she was injured." The court will add to this instruction these words: "The condition of the mare immediately after she was injured will be determined in the light of the testimony as to her condition after the extent of her injury was ascertained."

Judgment reversed, and cause remanded for a new trial.

EXTENDED OPINION—January 8, 1909.

1. A stall is reasonably safe when it is such as a person of ordinary prudence would provide. The defendant may show, by persons qualified to know, that the stall in question was put up in the usual and customary method of erecting stalls for the shipment of horses, and that it was reasonably safe for that purpose.

2. The defendant offered to pove by J. W. Bondurant that, after the horses had been at Memphis some days, he met Benyon, who was then in charge of the horses, and Benyon then told him they were all right. It is insisted that this testimony of Bondurant was binding upon the plaintiffs as an admission, and was competent for this purpose as substantive evidence. In Greenleaf on Evidence, section 113, the rule is thus stated: "The party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency in regard to a transaction then depending, et dum fervet opus. It is because it is a verbal act, and part of the res gestæ, that it is admissible at all, and therefore it is not necessary to call the agent himself to prove it; but, wherever what he did is admissible in evidence, then it is competent to prove what he said about the act while he was doing it, and it follows that, where his right to act in the particular matter in question has ceased, the principal can no longer be affected by his declarations, they being merely hearsay."

The same rule has often been announced by this court. Thus, in Reed v. Brooks, 13 Ky. 127, the court

said: "The confessions of an agent can not be admitted as proof either of his agency or of acts done by him as agent. Where what an agent says is part of the res gestae, it may be proved as any other act of his agency may be; but the confessions offered to be proved in this case were evidently not of that character." In Roberts v. Burks, 16 Ky. 411, 12 Am. Dec. 325, the court said: "The principle that the declarations or confessions of an agent, except they be made at the time and compose a part of acts done by him for his principal, within the scope of his authority, can not be given in evidence to charge the principal, is too well settled to need authority to support it. The confessions of the agents in this case do not appear to have been made at the time of doing the acts, nor does it appear that they were executing any authority given them, except by their own declarations." These principles have been often since applied by the court.

Benyon was an agent of the plaintiffs to ship the horses. What he said in shipping them is competent against the plaintiffs; but what he said in Memphis, after the horses reached their destination, is no more competent against the plaintiffs as substantive evidence than the declarations of a livery stable keeper would be to whose keeping the horses had been intrusted after they reached Memphis. In talking to Bondurant as to how the horses were, Benyon did not represent the plaintiffs, and what he said is only competent to contradict him as a witness.

3. For the same reason, the statement of McManus, offered to be proven by J. W. Gartrell, to the effect that Emily Letcher always gave him trouble, and that if she became unmanageable he would jump out of the car to get out of her way, if it was going 40 miles an

hour, was incompetent. This statement of McManus was in no sense a part of the res gestæ.

The opinion is extended as above indicated.