CASE 29.—ACTION BY JAMES H. KELLY AGAINST THE ADAMS EXPRESS CO. FOR NEGLEGENTLY CAUSING THE DEATH OF A JACK IN SHIPMENT.—June 4, 1909.

# Kelly v. Adams Express Co.

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Affirmed.

1. Carriers—Carriage of Live Stock—Duty of Carrier.—Defendant railroad, when its agent saw that a jack shipped by plaintiff was so frightened by a train as to throw him into an uncontrollable fit of terror, causing him to fall down in his crate, so that he could not get up, was bound to use ordinary care to protect the jack from further injury, and if to do so required him to be unloaded and recrated, or otherwise given attention it should have been done at the first stopping place affording reasonable facilities for that purpose.

2. Carriers—Carriage of Live Stock—Injuries—Instructions.—In an action against a railroad for death of a jack shipped by plaintiff, instructions that, if the injury was the proximate result of defendant's failure to exercise reasonable care, plaintiff might recover, but that if the death resulted from a disease which the jack had when received for shipment, or by other causes not resulting from defendant's want of care, or from fright of the jack, not caused by want of care on defendant's part, defendant was not liable, did not preclude the jury from considering the question whether defendant's want of care on discovering that the jack had fallen in its crate as a result of fright and could not get up was the proximate cause of the loss.

3. Carriers—Carriage of Live Stock—Injuries—Liability.—Where defendant railroad undertook to use ordinary care in transporting plaintiff's jack that plaintiff was present in the car and saw defendant fail to comply with the contract did not

Kelly v. Adams Express Co.

detract from defendant's liability, provided plaintiff's con-
duct did not amount to an estoppel.

4. Appeal and Error—Objections Not Raised Below.—Where
plaintiff voluntarily assumed the burden of proof throughout
the case, and made no objection that the burden was on
the defendant, he could not raise such point on appeal.

5. Appeal and Error—Harmless Error.—Though defendant car-
rier failed to complete its contract to transport plaintiff's
jack and plaintiff was entitled, in an action for death of
the jack to recover one-half the freight charges of $31.68,
the amount was too small to justify a' reversal of the judg-
ment for defendant and new trial on that account alone.

GUY H. HERDMAN, Counsel for Appellant.

B. F. PROCTER, PROCTER & HERDMAN, of Counsel.

## SUMMARY AND AUTHORITIES.

1. A carrier of live stock is an insurer except as to loss or
injury from inherent defects, propensities, or proper vices of the
animals themselves, and burden of disproving negligence and es-
tablishing death or injury from the above exceptions is on the
carrier. Browne's Law of Bailments, page 197 and cases cited.
C. N. O. & T. P. R. R. v. Sanders & Russell, 80, S. W. 488; Stiles
&c. v. L. & N. R. R. 110 S, W. 820; (J. Barker); L. & N. R.
R. v. Pedigo, 113 S. W. 116;   (J. Settle); Sou. Ex. Co. v. Fox &
Logan, 115 S. W. 184; (J. Hobson).

2. The right of plaintiff below to the recovery of express
charges prepaid by him is admitted by the pleadings.

3. The contract of carriage is in its nature an entire contract and
unless completely performed by delivery at the place of destination
the carrier can not claim freight, or retain the charges prepaid.
Western Trans. Co. v. Hoyt, 69 N. Y. 230; Tenn. V. & G. R. R.
v. Hunt, 15 Lea (Tenn.) 261. Adams v. Haught, 14 Texas 243;
Rapalje & Mack's Digest, 2 Vol. page 646.

SIMS, DuBOSE & RHODES for Appellee.

We submit that this case was set and tried out by a jury which
held that the Appellant could not recover. This verdict was
sufficiently sustained by the evidence and the instructions fol-
lowed the pleadings. We respectfully ask an affirmance of the
judgment. L. & N. R. R. Co. v. Harrod, 115 Ky. 882.

OPINION OF THE COURT BY JUDGE O'REAR—Affirm-
ing.

vol. 134—14

This action is based upon a contract of affreightment, by which appellee undertook, in consideration of $31.68 to carry a jack for appellant from Bowling Green, Ky., to Sandusky, Mich. The jack was boxed in a crate and placed on the trucks at the depot, at Bowling Green, apparently in good condition. A train which came into the station ahead of the one on which the jack was to be carried excited him so that in plunging he partially fell down in the crate and was not able to regain his position. He was loaded on the express car in a few minutes and started on his journey. Appellant was a passenger on the same train. At Lebanon Junction he went forward into the express car to see how the jack was faring, when he found him down in his box and unable to rise. The agent of the express company who was in charge of this car recommended that the jack be removed from the box. Appellant, who was without experience in shipping such live stock, said the matter was in the hands of the express agent. The latter, decided to, and did, with appellant's help, take the jack out of the crate and laid him upon the floor of the express car. Still he was unable to get up. Appellant claims that the trunks and loose boxes near the jack's head, being jostled about by the swaying of the car, hit him on the head and mouth, causing them to bleed. The jack remained on the floor of the car until it reached Cincinnati, going by way of Louisville. At frequent intervals appellant went into the car to see the jack, but was unable to do anything for him. Appellant took another train at Cincinnati and did not see the jack again. At Cincinnati appellee's agents, being unable to get the jack upon his feet, called a veterinary surgeon and placed the animal in his charge, where, after linger-

ing some days, it died. This suit was brought by appellant against appellee, charging it with a breach of the contract to carry the jack, in that it negligently allowed him to get hurt while in appellee's sole custody, from which he died, entailing a loss of $600 on appellant. The answer denied the negligence, and denied that the jack was injured while in its charge, or died because of such injuries. It pleaded affirmatively that the jack, by reason of its own vicious propensities, injured itself and that it died from a disease which it had before being delivered to appellee for transportation. An issue being joined, the case went to the jury, who returned a verdict for appellee.

The evidence tended to show that the jack was in apparently sound condition when delivered to appellee at Bowling Green. The veterinary at Cincinnati testified that the animal died as the result of azoturea, a disease of the muscles of the loins and hind quarters, due to excessive albumen in the blood, probably the result of overfeeding and lack of exercise. He further testified that there were no injuries of any consequence to the head. The evidence was such upon these issues that the case was one for the jury. It was sharply conflicting in material parts, and pretty equally balanced in weight. The court's instructions to the jury are in four paragraphs. The first told the jury that if the jack was injured while being shipped by the defendant, and the injury was the proximate result of the defendant's failure to exercise reasonable and proper care for the animal, they should find for the plaintiff the fair market value of the jack at Sandusky, Mich. The second paragraph of the instructions is in these words: "If the jury believe from the evidence that

the death of the jack was caused by a disease which he had when received by defendant for shipment, or which was produced by other causes not the result of defendant's want of care, or by fright of the animal not caused by want of proper care on part of defendant in the shipment of said animal, they will find for the defendant; and they may find for it the necessary and reasonable amount expended, if anything, in an effort to cure the jack at Cincinnati, not to exceed the amount claimed by the defendant, to wit, $50.'' The third paragraph was an unobjectionable definition of care, and the fourth withdrew certain evidence which had been objected to by the plaintiff, and which is not assigned as error by the appellant on this appeal.

While the language of the petition is perhaps broad enough to have allowed a recovery for the loss of the jack, from whatever cause, for which the defendant was liable, the real issues tried out in the circuit court, and which were those evidently in the minds of the parties, were: (1) Whether the jack was injured physically while in the defendant's custody, and as the result of the carrier's negligence; and (2) whether it died from a disease which it had before it was delivered to the defendant, and independent of any injury inflicted upon it because of the defendant's negligence. While the plaintiff objected formally to each of the first three instructions, he did not offer any other presenting his view of the law of the case. Nor does he now contend that there was error in those instructions, other than that the carrier should have been held as an insurer of the safety of the animal; at least, that it was incumbent on the carrier to show when it failed to

deliver the animal, that the failure was due to some disease, vice, or propensity of the animal itself. It has occurred to us, and we think it proper to say, that the express company, when its agent saw that the jack was so frightened as to throw him into an uncontrolable fit of terror, causing him to fall down in his crate, so that he could not get up, was under the duty to use ordinary care to protect the animal from further injury; and if to do so required him to be unloaded and recrated, or otherwise given attention, it should have been done at the first place at which the train stopped and which afforded reasonable facilities for that purpose; for it may be that the animal had incipiently azoturea, and that its fright tended to aggravate the malady, for neither of which was the carrier liable. But if the animal got down in such position as to show that he was sick, or liable to be injured by its unnatural and enforced posture, the carrier ought not to have carried it on for hundreds of miles, past many stops, until the brute was practically dead before taking steps for its relief; and if such neglect was a contributing cause to the death of the animal, but for which it probably would not have died, it should have been left to the jury to say whether that neglect was the proximate cause of the loss. But, as we have seen, no specific instruction was requested upon this point, and a careful analysis of the second instruction will show that it might have embraced the identical point being discussed, though it was presented negatively.

We cannot say that the jury were precluded by the instructions from considering the phase of the case which has just been discussed and which impresses us as constituting appellant's real cause of action.

Appellant's presence at times upon the car did not absolve appellee from any of its liability under its contract. Appellee undertook by contract, in consideration of the tariff charged, to use ordinary care and attention in transporting the jack. The fact that appellant was present and saw it fail to comply with the contract detracts nothing from its liability, so long as appellant's conduct did not amount to an estoppel; and it is not contended in this case that it had that effect.

The principal error assigned by appellant for a reversal is that the court ruled against him and to his prejudice in placing upon him the burden of proof in the case; that the instructions should not have imposed upon him the burden of showing that the jack was lost, not by reason of some disease or vicious propensity of its own. It is contended that the carrier is an insurer against its own negligence as to live stock, as it is to inert freight; but that the qualification noted in reported cases, to the effect that the injuries received by live stock because of its own vicious nature, or disposition, or from diseases not caused by the carrier's negligence, is a matter of special defense. Let it be granted; still appellant cannot avail himself of his contention in this case, because he voluntarily assumed the onus throughout the case, and made no objection on that ground at any stage of the trial. He is now bound by his conduct.

Appellant also claims that inasmuch as he paid the freight, $31.68, for carrying the jack through from Bowling Green to Sandusky, and as the appellee executed only part of the contract, he was entitled to recover the amount paid as freight.

While there may be circumstances under which the carrier may be absolved from performing the contract, having only partially done so, which entitles the shipper to have refunded the sum represented by the tariff for the part of the shipment not executed, there is no evidence in this case, and none offered as to what proportion of the charges had been earned by the carrier. Assuming it was one-half, the amount remaining is too small to justify a reversal of the judgment on that account alone, and to order a new trial of the case.

Judgment affirmed.