### FLOYD *v.* THE STATE.

1. The assignments of error based on objections to the solicitor-general of the Middle circuit acting in his official capacity, after the transfer to the Augusta circuit of the county where the trial occurred, are concluded by the rulings in *Godbee* v. *State,* 141 *Ga.* 515 (81 S. E. 876).

2. Acts and circumstances forming a part or continuation of the main transaction are admissible as res gestæ.

3. The reading in its entirety of Penal Code § 70, defining justifiable homicide, under the circumstances of the case, will not require a new trial.

4. By way of preface to his instruction on the law of the prisoner's statement, the court remarked that the defendant had made a statement in "explanation" of the crime alleged against him in the indictment. Such prefatory remark is no sufficient ground for a new trial.

5. There was no error in refusing to grant a mistrial because of alleged improper remarks of the solicitor-general.

6. Neither the evidence nor the prisoner's statement authorized a charge on either total or delusional insanity.

7. In so far as the requests to charge were legal and pertinent they were covered by the general charge. Assignments of error on the charge are not of a character to require a new trial. The evidence warranted the verdict.

MARCH 9, 1915. REHEARING DENIED APRIL 23, 1915.

Indictment for murder. Before Judge Walker. Jenkins superior court. October 24, 1914.

*Charles G. Reynolds, Leroy Cowart,* and *J. McSwain Woods,* for plaintiff in error. *Warren Grice, attorney-general, R. Lee Moore, solicitor-general,* and *A. L. Henson,* contra.

EVANS, P. J. 1. The plaintiff in error was convicted of the murder of Berta Perdue, in the superior court of Jenkins county. In his writ of error complaint is made that various steps in the trial were illegal, because it was conducted by the solicitor-general of the Middle circuit, after the passage of the act transferring Jenkins county from the Middle to the Augusta circuit. The various demurrers, motions, and pleas of the plaintiff in error on this subject are substantially the same as were made in the case of *Godbee* v. *State,* 141 *Ga.* 515 (81 S. E. 876), and are controlled by the rulings made in that case.

2. The testimony introduced by the prosecution tended to show that the defendant went to the house of a friend of the deceased, where the deceased was on the porch engaged in combing the hair of a child of her host. When he reached the gate of the yard he called to the deceased to come to him, and said he wished to tell her something. The deceased replied that she would come when she had finished combing the child's hair. The defendant repeated his demand, and the deceased made the same reply. The defendant then said, "I have got to go off," and the deceased said, "I will hear it when you come back." The defendant said, "I aint going off," jumped upon the porch, threw the deceased down, and beat her with his fists. He jerked her down the steps and seized a long-tooth iron rake and struck her over the head several times with it. In striking her with the rake he broke the handle, threw down the broken piece, and walked through the gate; then immediately turned round, came into the yard, and discharged his pistol three times into her prostrate body. The eye-witnesses testified that the

tines of the rake penetrated the skull, and that the woman was dead when he fired his pistol at her body. The defendant moved to reject the testimony relating to the shooting, on the ground that the woman was dead when he shot her body. The court refused the motion. There was no error in so doing. The indictment charged the murder as having been caused "by beating the said Berta Perdue with a certain farming tool commonly called a rake, and by shooting said Berta Perdue with a pistol." The beating of the victim with a rake and discharging his pistol into her prostrate body were the defendant's continuous acts, and everything that was done at the time of the homicide entered into the res gestæ of the transaction. Moreover, the firing of the pistol into her lifeless body tended to illustrate his state of mind, and that his whole conduct was inspired by an abandoned and malignant heart.

3. Preliminary to his instruction on the law of justifiable homicide, the court read to the jury in its entirety section 70 of the Penal Code. Exception is taken to the reading of so much of that section as relates to justifiable homicide to prevent a forcible invasion of habitation, as being inapplicable to the facts. The criticism is well taken, but the error is harmless. The court should have read only so much of the section as related to homicide in self-defense, or in defense of person against an impending felony. But the defendant could not possibly have been harmed by reading the whole section. At most, he was given the benefit of an instruction upon a phase of justifiable homicide to which he was not entitled, and which in no wise prejudiced his case. See *Brown* v. *State,* 125 *Ga.* 281 (54 S. E. 162).

4. The court prefaced his instruction relative to the prisoner's statement as follows: "Now the defendant in this case has appeared before you and made a statement in explanation of the charge made and alleged in the indictment against him." The prefatory remark of the judge is contended to have had the effect of leading the jury to believe that the defendant admitted the charge as alleged in the indictment, and was trying to explain it away. We think the criticism hypercritical, especially in view of the fact that the court immediately followed up the remark with a full and correct instruction concerning the law of the prisoner's statement, as contained in the Penal Code, § 1036.

5. Counsel for the accused moved for a mistrial, on the ground

that the solicitor-general had declared in his argument to the jury that in his opinion the defendant was guilty of a most diabolical crime. When the motion was made, the solicitor-general stated that if he had expressed his opinion to the jury he would withdraw it. Thereupon the court admonished the jury to disregard the personal opinion of the solicitor-general, and refused to declare a mistrial. In a prosecution for a homicide, a statement by the prosecuting attorney in his argument, expressive of his opinion of the defendant's guilt, and his characterization of the crime as being diabolical, should be construed to mean that the testimony led him to this conclusion, and that the jury should reach the same conclusion. In the absence of anything to the contrary, the solicitor's remarks will be regarded as a deduction from the evidence. State *v*. Armstrong, 37 Wash. 51 (79 Pac. 490) ; Thacker *v*. State, 3 Okla. Cr. 485 (106 Pac. 986) ; Valentine *v*. State, 108 Ark. 594 (159 S. W. 26). What the law condemns is the injection into the argument of extrinsic and prejudicial matters which have no basis in the evidence. Thus, in *Broznack* v. *State,* 109 *Ga.* 514 (35 S. E. 123), counsel employed to assist in the prosecution declared in the course of his argument that "he would not appear in the case if he did not believe the defendant to be as guilty as any man that was ever tried in the court-house." This was an assertion of the conclusion he had reached when he was employed as counsel,—a conclusion clearly not referable to the evidence adduced on the trial. Had there been room for any misapprehension on the part of the jury in this case, as to whether the statement was made as a deduction from the evidence, or as an effort to introduce a substantive fact outside of the evidence, the withdrawal of the remark by counsel and the ruling of the court obviated the danger.

6. Though requested in writing, the court refused to give the following charge: "I charge you that if the defendant was, at the time of the commission of the alleged crime, insane to such an extent that he did not know right from wrong, he would not be legally responsible for his acts, and you would be bound to acquit him. I charge you further that if the accused did have sufficient reason to distinguish between right and wrong; if his will, in consequence of some delusion brought about by mental disease, was overmastered so that there was no criminal intent as to the act in question, and if it also appears that the killing was connected with

the peculiar delusion under which the accused was laboring, you should find him not guilty." In the assignment of error it is contended that such charge was authorized by the statement of the accused, that "About seven years ago I was hit on the head with the sweep of a timber cart, and at times I didn't know what I was doing. The woman had worried me so about living with her until I was very near crazy, and I could not have helped killing her if I had wanted to." This statement was wholly insufficient to raise the issue of either total or delusional insanity. The defendant began his statement to the jury by declaring that he had "lived with this woman as a husband of hers." And it is clearly inferable from the record that the motive for the homicide was the deceased's termination of her illicit relations with the accused. The defendant in his statement claimed that the deceased was advancing upon him with a knife, and that he struck her with the rake and shot her with the pistol in defense of his person. The isolated statement that several years ago he had sustained a wound, and that at times he did not know what he was doing, is utterly insufficient to raise the defense of insanity.

7. Several excerpts from the charge are criticised, but, when considered in connection with their context, they are not open to the criticism made against them. The requests to charge, in so far as they were pertinent and legal, were covered by the general charge. The evidence warranted the verdict, and there was no abuse of discretion in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*