The plaintiff sued to recover damages for injuries to horses and mules shipped by it from East St. Louis, in the State of Illinois, to Washington, N.C. over the defendant's line of railway, the Norfolk Southern *Page 109 
Railroad, and the lines of intermediate carriers. There were two shipments. One, consisting of twenty-six horses and twenty-six mules, was made on 2 January, 1912, and the other, consisting of twenty-two horses and four mules, on 18 January, 1912. Plaintiff alleged that some of the animals were either killed or missing, and others seriously injured and damaged by the negligence of the carriers in the course of the transportation. He claimed that the total loss to him on both shipments was $2,701.30, for which he prayed judgment. The defendant L. and N. Railroad Company, the initial carrier, in its answer, relied upon the character of the shipment, as being interstate, and especially upon the provisions of the act of Congress known as "An act to regulate commerce" and the several acts supplementary thereto and amendatory thereof, and more especially the acts of Congress known as "The Hepburn Act" and "The Carmack Amendment," and it specially claimed the benefit and protection of the said Federal legislation. It also averred that it issued bills of lading for the two shipments of stock, each of which contained a clause limiting the liability of the carrier for any loss of or damage to the animals, to the value thereof at the place of shipment, the maximum of which is agreed to be in this case $100 for each animal, the total recovery for loss or injury not to exceed that amount; and there was this futher [further] provision, that the shipper, before removing the animals from the place of final delivery to him, should, as a condition precedent to his right of recovery for loss or injury, give the last carrier, or the one from whom he is to receive the animals, written notice of his claim before removing them, both stipulations being based on reduced rates of transportation as shown in the regular tariffs properly filed and promulgated. The two identical clauses in the bills of lading are in these words and figures:
"Should damage occur for which the said carrier may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed, for a jack $150, for a horse or mule $100, mare and colt together $100, yearling colt $50, cow and calf together $35, domestic horned animals $30 each, yearling cattle each $15, calves, hogs, sheep, or goats $5 each, chickens, ducks, and guinea fowls $2.50 per dozen, geese $3.50 per dozen, and turkeys $5 per dozen, which amounts it is agreed are as much as such animals as are herein agreed to be transported are reasonably worth.
"As a condition precedent to the shipper's (or consignee's) right to recover any damages for loss or injury to said animals, he will give notice, in writing, of his claim therefor to the agent of the (68) railroad company, or other carrier from whom he receives said animals, before said animals are removed from the place of destination above mentioned, or from the place of delivery of the same to the said *Page 110 
shipper (or consignee) and before said animals are mingled with other animals."
The defendant then avers that the plaintiff failed to give the written notice of his claim for loss or damage before removing the animals, and that his recovery should be based upon the valuation of each animal at not more than $100, and not upon any higher value.
The plaintiff replied that, while there was written notice given as to the first shipment and none as to the other, defendant had actual notice of the loss of and injury to the animals in the second shipment before their removal from the station or premises of the Norfolk Southern Railroad Company at Washington, N.C.
The court charged the jury with reference to the notice as follows: "On the 2d issue I charge you that if you find from the evidence and by its greater weight that the manager of plaintiff while unloading the stock at Washington gave the agent of the Norfolk Southern Railroad Company the writing introduced in evidence and relied on as the notice, you will answer it yes; and as to the 6th issue I charge you that if you find by the greater weight of the evidence that while the second shipment was being unloaded the plaintiff brought to the attention of the station agent, Singleton, the condition of the stock, and Singleton saw and understood it, and that the agent Myers went up to the stables next day and saw the stock, you will answer it yes."
With regard to the notice, the court refused to instruct the jury, as requested by the defendant, that neither actual knowledge of the receiving agent at Washington, N.C. even if the matter had been brought specially to his attention, nor a verbal notice of the plaintiff's claim would take the place of the written notice required by the terms of the bill of lading.
The court then charged the jury, upon the question of notice, as follows: "It is stipulated in the 9th section of the contract that the value of a horse or mule injured by the negligence of the defendant should be fixed by its value at the time and place of shipment, and it was agreed between the parties that the value of a horse or mule should not exceed $100. The court charges you that if you come to assess damages under the 3d issue, you should allow to the plaintiff the value of such horse or horses or mules as may have been lost by the negligence of the defendant or its connecting carriers, not to exceed $100 for the total loss of each. The court charges you that if you come to the 5th and 10th issues, that the proper measure of damages by which you will be guided is the actual market value of the damaged horses or mules in their damaged condition, if you find they were damaged, at the (69) time and place of shipment; and if you should find that any of the horses and mules would have been worth in that condition at *Page 111 
the time and place of shipment $100, then the plaintiff is not entitled to recover any sum for such damaged horses or mules."
The court further charged, as to the negligence of the defendant, that "It was the duty of the defendant to use reasonable care and prudence in loading and in the selection of cars and in handling the stock and in unloading and reloading for feeding, and that this care should have reference to the weather conditions; and if you find by the greater weight of the evidence that the railroad company failed in this duty, and this failure was the proximate cause of the injury to the stock, you should answer the first issue yes."
The jury returned the following verdict:
1. Was the shipment of 2 January, set out in the first cause of action, injured by the negligence of the defendant or its connecting carriers, as alleged? Answer: "Yes."
2. If so, was notice thereof given by plaintiff before or at the time of receiving same? Answer: "Yes."
3. If so, what damages, if any, is plaintiff entitled to recover for such horses or mules as were totally lost by reason of such negligence? Answer: "$200."
4. What damages, if any, is plaintiff entitled to recover for extra attention and feed and medicine given said animals by reason of injuries caused by the negligence of the defendant or its connecting carriers? Answer: "$192,"
5. Was the shipment of 18 January, set out in the second cause of action, injured by the negligence of defendant or its connecting carriers, as alleged? Answer: "Yes."
6. If so, did plaintiff give notice thereof before or at the time of receiving same, as required? Answer: "Yes."
7. If so, what damages, if any, is plaintiff entitled to recover for such horses or mules as were totally lost by such negligence? Answer: "$400."
8. If so, what damages, if any, is plaintiff entitled to recover for extra service and attention and feed necessarily given said animals by reason of such negligence? Answer: "$72."
Judgment was entered upon the verdict, and defendant appealed.
After stating the case: First. While the charge of the court in this case was not as full or as explicit as it might have been, it was sufficiently clear for the jury to understand what was the rule of law as to the liability of defendant for negligence, and (70) *Page 112 
it gave the defendant the benefit of any finding that the injury to the animals was due not to defendant's negligence, but solely to the condition of the weather. We discussed fully, in Kime v. R. R., 160 N.C. 457, the duty and responsibility of a carrier by rail with respect to the selection of a suitable car, and also with regard to the care of the animals during the transportation, and it is not necessary that more should be said here. We there held that the fact that the shipper happened to examine the car and believed it to be suitable and sufficient would not relieve the defendant of liability if in fact it was defective. We said in that case: "A general stipulation that the shipper has examined the car in which the stock is shipped, and accepts it as suitable and sufficient, will not stop him from recovering for injuries due to a defective car, inasmuch as the carrier cannot limit his common-law liability so as to exempt himself from the consequences of his own negligence." 6 Cyc., p. 441; 2 Hutchison on Carriers (1906), sec. 646 (324), and p. 712; R. R. v. Dies, 91 Tenn. 177.
Second. There was some evidence that the stock was in good condition when delivered to the initial carrier at East St. Louis, or, at least, there were facts and circumstances from which an inference to that effect could fairly and reasonably have been drawn by the jury. The defendant's evidence furnished some proof of the fact, and also the plaintiff's.
Third. The defendant contends that the plaintiff has not shown compliance with the stipulation in the bill of lading requiring written notice of any claim for damages to be given before removal of the stock at the place of destination, but there was evidence that there was actual knowledge by the agent of the condition of the stock before the removal took place, and we have held this to be a waiver, or rather a substitute for such notice in writing. Whether right or wrong, we have so decided. The case of Baldwin v.R. R., 170 N.C. 12, settled the following points:
1. Stipulations in bills of lading covering interstate shipments of live stock, requiring written notice of claims for damages to be given before the stock is removed from the carrier's possession, are valid.
2. The requirement in an interstate bill of lading that notice of damage to live stock shall be in writing is waived by actual knowledge on the part of the carrier of the injury.
3. The rules laid down by this Court after the passage of the Elkins Act of 1903. (act Cong. 19 February, 1903), ch. 708, 32 Stat., 847 (U.S. Com. Stat., 1913, secs. 8597-8599), that stipulations in bills of lading covering interstate shipments of live stock, requiring written notice of claims for damages, are valid, and that such written notice is waived by actual knowledge of the injury on the part of the carrier, will be *Page 113 
adhered to until a declaration by the United States Supreme Court (71) that such rules are abrogated by the act.
4. The rule permitting knowledge to supply the place of written notice, being a mode of proof applicable alike to all railroads and in favor of all shippers, and enforced against a carrier who has had possession, with every opportunity to know the extent of the injury and its cause, is not a discrimination between railroads, nor a preference in favor of a particular shipper at the expense of others.
That case was approved in the later case, at the same term, of Mewborn v.R. R., 170 N.C. 205. This question, therefore, is closed so far as this Court is concerned. We simply follow our own precedents, which, as stated in the Baldwin case, must stand until reviewed and reversed. But we will again refer to this subject.
Under the rule laid down in Baldwin's case, to which we have referred, actual knowledge by the last carrier, or its agent, at the place for delivery to the consignee will in law be ascribed to the initial and other carriers in the line of transportation, and it was so held, we think, in that case, and also in Mewborn's case, supra, where the action was brought against this same defendant, though the horses and mules were deliverable, and were actually delivered, at Kinston, N.C. by the Southern Railway Company, which was the last carrier.
Fourth. We are of the opinion that the court gave to the jury the correct instruction as to the measure of damages. It cannot be that if the horses or mules were lost or injured by defendant's negligence, but were still worth as much as $100 apiece, the plaintiff would not be entitled to recover anything for the loss of or damage to them. The clause of the contract, as to value, was intended to limit the recovery to an amount not exceeding the stipulated value, in consideration of the reduced freight rate, and not to deprive the shipper of any redress for the defendant's breach of its contract to safely carry and deliver to the consignee, or for the tort growing out of its negligence in failing to properly transport and care for the stock. The correct rule of damages requires that the jury should determine to what extent the horses and mules were damaged or their value impaired, assuming $100 to be the limit of the value as to each one of them, and assess the damages accordingly; or, in other words, the assessment of damages, as to each animal, must be based upon a valuation not exceeding $100, it being the contract limitation and not the actual valuation which determines the measure of damages. If the rule as stated by the defendant in its prayer for instructions should govern, damages would rarely be recovered under such contracts of carriage, however apparent it may be that the carriers' negligence caused the injury. The true value, within the restriction mentioned, should be ascertained at the place of shipment, as that is *Page 114 
provided for in the bill of lading. 4 Ruling Case Law, 930; (72) M. M. Transportation Co. v. Eichenberg, 109 Md. 211 (130 Am. State Rep., 524). This Court held the clause in the bill of lading fixing or limiting the value of the stock to be invalid so far as it is an exemption from its liability for negligence or is unjust or unreasonable. Pace Mule Co. v. R. R., 160 N.C. 215, 224; Stehli v.Express Co., ibid., 493. In the former case the Court said at p. 224: "It is upon these principles that we have held that the valuation clause in a bill of lading is inoperative when relied on to exempt from liability for negligence, and cannot diminish the recovery of damages caused by such negligence. Gardner v. R. R., 127 N.C. 293; Everett v. R. R., 138 N.C. 71;Stringfield v. R. R., 152 N.C. 128; Kissenger v. R. R., 152 N.C. 247;Harden v. R. R., 157 N.C. 238. It has heretofore been recognized that the cases of Jones v. R. R., 148 N.C. 449, and Winslow v. R. R.,151 N.C. 250, are not in harmony with the authorities in this State and elsewhere, and they are now overruled." But in Adams Express Co. v.Croninger, 226 U.S. 491; M. K. T. R. Co. v. Harriman, 227 U.S. 657
(57 L.Ed., 690); K. C. So. Ry. Co. v. Carl, 227 U.S. 683; S. A. L. Ry.Co. v. Pace Mule Co., 234 U.S. 751 (58 L.Ed., 1571); Southern ExpressCo. v. Stelhi, 238 U.S. 605 (59 L.Ed., 1485), and other cases, which are collected in 59 L.Ed., at p. 1485, the Federal Supreme Court held that:
1. State laws or policy nullifying contracts limiting the liability of a carrier for loss or damage to the agreed or declared value upon which the rate was based are superseded, so far as interstate shipments are concerned, by the Carmack amendment of 29 June, 1906, sec. 7 (34 Stat. at L., 593, ch. 3591, U.S. Com. Stat., Supp. 1911, p. 1304), to the act of 4 February, 1887 (24 Stat. at L., 386, ch. 104), which furnishes the exclusive rule on the subject of the liability of a carrier under contracts for interstate shipment.
2. The shipper and carrier of an interstate shipment are not forbidden to contract to limit the carrier's liability to an agreed value made to adjust the rate by the provisions of the Carmack amendment of 29 June, 1906, to the act of 4 February, 1887, sec. 20, prohibiting exemptions from the liability imposed by the act.
We have to follow what is there decided in construing such contracts, and the cases apply as well to the place of valuation as to the valuation itself.
While the trial court did not expressly state in the charge, as to damages, that the value of the horses and mules must be confined to the place of shipment, we think this is clearly implied. But if it is not, it was a mere inadvertent omission of the court, to which no exception was definitely taken, or, so far as we can see from the record, no exception *Page 115 
at all. Defendant may have, by implication, requested an instruction as to this matter, which is the subject of its 16th assignment of error, but the prayer, if it does sufficiently state the rule as to (73) the place of valuation, was blended with another one, to the effect that if the horses and mules were worth $100 apiece, after they were damaged, plaintiff could not recover anything, which is erroneous, as we have seen. The instruction, under the well settled rule, must be good as a whole, for otherwise it can properly be refused. The judge charged the jury, in respect to this matter, with substantial correctness.
We may further say, as to the written notice required to be given before removing the stock from the terminal station, that this Court has consistently held such a stipulation in a bill of lading to be valid. Selbyv. R. R., 113 N.C. 594; Austin v. R. R., 151 N.C. 137; Kime v. R. R.,153 N.C. 400; Duvall v. R. A., 167 N.C. 24. As already noted, we have also said that it may be waived, or that knowledge of the condition of the animals before they are taken away will supply the place of a written notice. It is suggested that this provision in the contract of shipment for written notice is governed by the same rule of decision laid down in the Federal cases as to the valuation clause, already cited and commented upon, and that since the Carmack amendment was passed the State courts cannot adopt a construction in opposition to it, the entire contract being based upon the rate fixed by the carrier and approved by the Interstate Commerce Commission, and no such construction being allowable under the Carmack amendment; and further, that the agent's authority was limited by the express terms of the bill of lading to receiving a written notice, and he therefore could not waive this stipulation without the consent or ratification of his principal, such a waiver not being within the scope of his duty or authority, because a power to receive notice does not include one to waive it, either expressly or by conduct. These might be persuasive if not cogent reasons, were it now an open question in this Court, but we have decided the other way too often to retrace our steps and enter upon the investigation anew as if it were an original one (res novo). We must await, if it is a Federal question, the judgment of a higher court upon it, which, if unfavorable to the view heretofore taken by this Court, will be followed as the proper law.
A discussion of the question as to value will not much longer be a practical one, as Congress, on 4 March, 1915, enacted a law (known as the Cummins amendment) abolishing all exemptions from liability for loss or injury or damage to property transported in interstate commerce which is caused by the carrier, and making the carrier liable to the shipper for the full actual loss, damage, or injury to the property, notwithstanding any limitation of liability or limitation of the amount *Page 116 
of recovery, or any representation or agreement as to the value in any receipt or bill of lading or in any contract, rule or regulation, or in any tariff schedule, or in any manner or form whatsoever, and declaring (74) all such limitations unlawful and void, with certain exceptions not applicable here.
We have found no error in the rulings and judgment of the court.
No error.
Cited: Reynolds v. Express Co., 172 N.C. 494 (4cc); Bryan v. R. R.,174 N.C. 181 (4o); Taft v. R. R., 174 N.C. 212 (4o); Dixon v. Davis,184 N.C. 210 (4l).