FIDELITY & DEPOSIT COMPANY OF MARYLAND, Appellee, v. LEWIS W. MANSFIELD, Appellant.

**PRINCIPAL AND SURETY:** Principal's Agreement to Pay Premium—Collateral Promise to Pay. The principal in, a bond given for the performance of a contract between third parties must pay future accruing premiums in accordance with *his* agreement, even though said third parties have, as between themselves, obligated one of their number to pay said premiums.

**EVIDENCE:** Subsequent Oral Modification of Contract. Oral evidence in modification of a prior written contract is admissible *if a new consideration therefor be shown.*

**PRINCIPAL AND SURETY:** Liability for Premium—Guaranteed Contract as Evidence. The contract for the performance of which a bond is given is admissible on the issue whether the principal in the bond had performed all the terms of such contract, and was, therefore, no longer liable for premiums.

**EVIDENCE:** Sufficiency—Agreement to Furnish "Conclusive" Evidence. Under an agreement to furnish *"satisfactory and con-*

*clusive*" evidence of a fact, the question whether the evidence which the party did furnish is "satisfactory and conclusive" is ordinarily for the jury.

**TRIAL:**    Question for Court—What Constitutes "Written" Evidence.    Under an agreement to furnish *"written"* evidence of a fact, the question whether the evidence which the party did furnish is "written" evidence is for the court.

**PRINCIPAL AND SURETY:**    "Written" Evidence of Discharge. Under an agreement to pay future accruing premiums until the surety had been furnished *"written"* evidence of the termination of all liability under the bond, the principal may, when sued for such premiums, furnish such *written* evidence through the medium of his own sworn testimony, given on the trial, *when such evidence is taken in shorthand and transcribed into longhand and made a part of the record.*

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

DECEMBER 19, 1919.

SUIT to recover renewal premiums alleged to be due on a surety bond issued to defendant. Verdict was directed for plaintiff, and defendant appeals.—*Reversed and remanded.*

*Deacon, Good, Sargent & Spangler,* for appellant.

*Grimm, Wheeler, Elliott & Jay,* for appellee.

SALINGER, J.—I.    Action brought by plaintiff and appellee, a bonding company, against the defendant, to enforce the payment of premium upon a surety bond issued to the defendant about November 30, 1910. The first annual premium was paid, and the claim of the plaintiff is for renewal premiums only. This claim is based upon the failure to furnish satisfactory proof that the liability of the plaintiff had been terminated. The provisions of the application for the bond are relied upon for recovery. It states defendant agrees to pay the premium for the first year and for each year thereafter in advance, and that the applicant

will, "at the termination of my trust, furnish said company with satisfactory, written, and conclusive evidence that said trust has been faithfully and legally executed, and all persons interested paid." There was the further statement:

"I do also agree that said company may inquire of the beneficiaries of this trust as to the final settlement of the trust, or in regard to the management of the same."

Plaintiff alleges, and it is true, that no renewal premium has been paid. It alleges further that no such evidence has been furnished, and it demands judgment for the aggregate of the renewal premiums, with interest.

In answer, defendant admits signing this application, but he denies that he thereby became obligated to pay the plaintiff the compensation or premium for said bond, and alleges that, on the contrary, it was understood and agreed between plaintiff and defendant that defendant was not to pay said compensation or premium, but that the same was to be paid by the second parties to the certain contract to secure which said bond was issued; and defendant alleges that said application was made and said bond issued for the following purposes, and upon the following conditions, to wit: One Collier, as party of the first part, and others named as parties of the second part, and this defendant as party of the third part, had entered into a written agreement whereby parties of the second part in writing obligated themselves to pay second parties for lands in the state of Texas purchased of second parties; that it was agreed between first and second parties that this defendant, as third party, should act as trustee, under power of attorney from both first and second parties; that, as such third party, defendant should make to the first party a bond of indemnity for the faithful performance of his duties, and that the parties of the second part should pay all expenses of third party in carrying out the contract; that defendant, at request of

plaintiff, signed application that plaintiff assure the proper performance of the duties of applicant under said contract. He alleges further that a copy of this contract was delivered to plaintiff for its inspection; that, after inspecting same, plaintiff agreed to and did issue and attach to copy of said contract its written guaranty that defendant would faith- fully perform his duties under said contract; that, at the time he signed, it was orally agreed and stated by the agent of the plaintiff, who conducted the entire transaction, that said parties of the second part would pay the premium as the same fell due, and that said second party did pay the first premium. Defendant alleges further that he was, for reasons stated, unable to set out a copy of the bond until plaintiff furnished him a copy. This copy recites that de- fendant, as principal, and the plaintiff, as surety, are bound to Collier and to said second party in a sum named; that whereas, by articles of agreement entered into October 24, 1910, between said parties to the contract, certain things were done, which are said to be more fully set forth and de- scribed in the contract, and as to which it is said that a copy is attached and made to form a part, thereupon plain- tiff agrees that, if Mansfield "shall well and faithfully per- form the trust reposed in him by the above-mentioned arti- cles of agreement, then the above obligation shall be void," etc. Defendant further states that plaintiff is now claiming of him because he signed said application, and that such claim is contrary to the stipulation and agreement of said contract, Exhibit A, and contrary to the agreement with plaintiff through its said agent. In the application signed by defendant is a statement that, in consideration of the consent of the plaintiff to guarantee the bond herein applied for, the signer does "hereby covenant, promise, and agree to pay the premium or fees herein agreed upon, to wit, $235 first year, and $156.67 each year thereafter in advance. I certify that the answers given to the foregoing interroga-

tories are true, without reservation of any kind whatever. And in consideration of the Fidelity and Deposit Company of Maryland consenting or agreeing to execute or guarantee the bond herein applied for, I do hereby covenant, promise and agree to pay in advance the premium or fees herein agreed upon, to wit, $235 first year, and $156.67 each year thereafter until said company is furnished by the applicant with satisfactory, written, and conclusive evidence of the termination of its liability under this bond." Defendant answers that the application was made upon a blank furnished by plaintiff, and was filled out under the direction of said agent; that said agent orally agreed, at the time, that plaintiff would look only to the parties of the second part for payment of said premium, and would not hold defendant liable therefor; and that defendant signed the application which was prepared by plaintiff because plaintiff directed him to, and because he relied upon the provisions of said contract, and also upon the representations of plaintiff's said agent, that only said parties of the second part in the contract would be liable for said premium. He alleges that he has fully performed all his duties under the contract, and has no funds of parties to it in his charge or under his control, and has fully accounted to the party of the first part for all money or property coming into his hands, and that he is unable to procure the surrender of the bond because the same is in the possession of Collier, who refuses to surrender same.

II. The contract, the performance of which the bond assured, was excluded. It is contended that this was error, because that contract stipulated that, as between the parties to it, some party other than defendant should pay the premium, and because the agent of plaintiff orally agreed, when the application was signed, that payment should so be made. As to the last, the al-

1. PRINCIPAL AND SURETY: principal's agreement to pay premium: collateral promise to pay.

leged statements of the agent were not admissible, because they were an oral variance of a written contract contemporaneously made. As to the contract stipulation that other parties than the defendant should pay the expenses of carrying out the contract, we have to say that, while the contract was admissible for some purposes later to be spoken of, it did not bind the plaintiff insurer by the arrangement as to the payment of premiums. Its acceptance of the contract to the extent that it bound itself to assume the proper performance thereof by defendant made it sufficiently a party to the contract to enable it to claim payment of those who, in the contract, undertook to pay the expenses of defendant; but that did not release defendant from his express agreement to pay the premium: that agreement and the one in the contract are, as to the plaintiff, a double agreement, and entitled it to demand payment of either or both, and to assert claim for payment until either or both made payment. The bond is not the "last expression," in the sense that it "adopts all terms of the contract." The bond did not agree to assure defendant against breach of contract by the other parties to the contract, did not agree to reimburse defendant for his copartners' breach of their agreement to pay the expenditures of defendant in the matter covered by the contract. It may be granted that the knowledge of this agent was the knowledge of his principal. The trouble is, he had knowledge of nothing but an immaterial matter. This disposes of the further claim that defendant is released because the other parties made the one payment that was made, and that plaintiff deemed them liable for and demanded of them further payments.

III. Evidence was excluded which tended to show that the agent of plaintiff agreed to waive the right to recover of defendant, and agreed to look to the other parties to the con-

tract for payment of the renewal premium.

**2. EVIDENCE: subsequent oral modification of contract.** While this testimony does not violate the rule against contemporaneous oral variance, it was rightly excluded, because such an agreement requires a new consideration, and no evidence of such consideration was either tendered or put in.

IV. Of course, assuming that the agent was authorized to make the claimed representations, evidence of their having been made would be receivable on an issue to reform the writing. Appellant claims such an issue was made. If it was ever tendered, it seems to have been abandoned; the trial proceeded at law, without the trial of any equitable issue; and we find no brief point dealing with reformation.

V. Though it was not error to exclude the contract in so far as it was tendered to bind plaintiff with agreements found in the contract as to who should pay the premiums,

**3. PRINCIPAL AND SURETY: liability for premium: guaranteed contract as evidence.** the question remains whether its exclusion was not error. The application for the bond does not show—at least not fully—for what acts to be done by the defendant the bond was surety. It is conceded that defendant was entitled to an acquittance if he has fully performed the duties whose proper performance the bond guaranteed, and if he furnish such evidence of proper performance and termination of his duties as to the contract between him and plaintiff. In view of the state of the record, the contract should have been received, as a link in the chain of proving that there was no longer any responsibility for the proper performance of duties imposed by the contract. To show that the plaintiff was no longer liable for duties imposed by the contract, it was necessarily proper to show by the contract what duties were to be performed. The contract was a link in the chain of proving that responsibility for the things named in the contract had ceased. The sole remaining question, then, is whether the exclusion of the contract was

prejudicial.   If, after the contract were admitted, it should appear that, as a matter of law, the plaintiff was still liable, or if it should appear, as matter of law, that the contract evidence to show that responsibility was terminated had not been furnished, then, of course, the reception of the contract was harmless, and the court would disregard it, after having received it for the purpose of receiving light on whether the plaintiff was or was not still bound.   There was an abundance of evidence to send to the jury whether the defendant had performed all the duties imposed upon him by the contract, and that all relationship created by the contract had been terminated.   Unless, then, we may say that the evidence furnished by defendant upon this point is not written evidence, and, if written, that, as matter of law, it is not conclusive evidence, then the case should have been submitted to the jury, to have it say whether the contract relation covered by the bond had been ended, and whether the evidence to show the termination of plaintiff's liability was or was not conclusive.   There are many cases in which the law, without the aid of contract, requires conclusive evidence, and evidence proving a contention beyond a reasonable doubt.   As to this requirement, we have held that, to be sure, it fixes a standard which evidence must meet, but it does not define what quantum of evidence shall be deemed conclusive by the trier of facts.   The rule that

4. EVIDENCE: sufficiency: agreement to furnish "conclusive" evidence.

a certain thing shall or shall not be done unless there be conclusive evidence does not, in the average case, deprive the jury of the right to say whether the testimony meets that standard.   As to this, as in all other cases, conditions presented may be so extreme that the court may interfere.   But ordinarily, the fact that conclusive evidence is required still leaves the jury to say whether the

evidence *is* conclusive. See *Turner v. Hart-*
*ford F. Ins. Co.,* 185 Iowa 1363; *Stilwell v.*
*Stilwell,* 186 Iowa 177. We are of opinion
that the question whether the evidence was
conclusive was for the jury, and that the
question of whether such evidence was evidence in writing
was for the court. If, then, the court erred in holding that
the evidence was not written evidence, it erred in not submitting to the jury whether the evidence was conclusive.

5. TRIAL: question for court: what constitutes "written" evidence.

We hold that the evidence furnished sufficiently complied with the requirement that
the evidence should be in writing. This
makes it needless for us to say whether a
mere departure from the form of proving a
thing will defeat rights, where it appears overwhelmingly
that the thing was, in fact, done. See *Midland Linseed Co.*
*v. American L. F. Co.,* 183 Iowa 1046; *Highland v. Iowa*
*Life Ins. Co.,* 185 Iowa 1001. The allegations of the answer
set forth a claim that the liability on the bond had terminated. The evidence in proof of that statement was taken
down in shorthand, and afterwards transcribed into long-
hand, and made a part of the record. In essence, this does
not differ from what the situation would be if defendant had
made affidavit stating what his answer states and his testimony proves, and such affidavit remained without dispute.
It would hardly be contended, we think, that, if such affidavit had been transmitted to plaintiff, that it would not
have been a jury question whether it was conclusive evidence, within the meaning of the contract that conclusive
evidence should be furnished. Our final conclusion is that
the court erred in not holding that the evidence furnished
by the defendant was written evidence, and in taking from
the jury whether such written evidence was or was not conclusive evidence, within the meaning of the statement in

6. PRINCIPAL AND SURETY: "written" evidence of discharge.

defendant's application.  For this reason, the judgment below must be reversed.—*Reversed and remanded.*

LADD, C. J., EVANS, PRESTON, and STEVENS, JJ., concur.

