RUEBEL BROTHERS, Appellees, v. AMERICAN EXPRESS COMPANY, Appellant.

**CARRIERS: Undervaluation for Purpose of Rate.** The rule of law that
1   a shipper may not undervalue his shipment in order to obtain a low rate, and, after loss, demand the true value, is wholly immaterial when the action for loss is for the identical sum on which he obtained the shipping rate. Necessarily this is true when the carrier's own evidence suggests grave misconduct.

**TRIAL: Rejection of Nonexplanatory Exhibit.** The total exclusion of
2   an exhibit as irrelevant will be sustained when the record is barren of any showing of relevancy.

**APPEAL AND ERROR: Scope of Review—Unassigned Point.** Failure
3   on appeal to raise the specific point that plaintiff is not the real party in interest, works a waiver of such point, even though such point was belatedly raised in the trial court, especially when the trial was on the tacit assumption that plaintiff was such real party.

**APPEAL AND ERROR: Insufficient Reservation of Grounds.** Error
4   may not be based, on appeal, upon the *refusal* to give instructions, when the exceptions in the trial court and the error point on appeal are confined solely to the *giving* of instructions.

**APPEAL AND ERROR: Harmless Error—Failure to Specify Negli-
5   gence.** One charged with negligence may not complain that the court did not set forth in the instructions the specific negligence and misbehavior with which he was charged.

**CARRIERS:**    Instruction    to    Disregard    Contract—Harmless    Error.
Harmless error results from directing the jury to wholly disregard a shipping contract, in so far as it exempted the shipper from liability for injury to stock caused solely by the nature or propensities of the animals, and directing the jury that the carrier was exempt from liability for such injury, *irrespective of contract.*

**CARRIERS:**    Nonallowable    Contract    Exemption.    Principle reaffirmed that a common carrier may not exempt itself from liability for the nonperformance of its public duties.

**CARRIERS:**    Burden of Proof.    On an undisputed showing that an animal was shipped in good condition, and in the sole charge of the carrier, and died *en route*, the court may very properly tell the jury that it has but one question to decide, to wit: ''Has the defendant proven by a preponderance of the evidence that the death was caused (1) by an act of God, or (2) by the public enemies, or (3) by the disposition, nature, or propensities of the animal itself?''

**CARRIERS:**    Overthrowing Prima-Facie Cause of Action.    The prima-facie cause of action resulting from a showing that stock was shipped in good condition and in the exclusive custody of the carrier, and died *en route*, is not overcome, as a matter of law, by affirmative evidence that the carrier at all times exercised due care.

**CARRIERS:**    Presumption of Negligence Versus Evidence of Care—Request for Instructions.    On a record showing delivery in good condition and into the exclusive custody of a carrier, with death *en route*, met by testimony of due care on the part of the carrier, the latter, on request, is entitled to have the jury told that it must determine whether, on the whole case, plaintiff has made out his case by a preponderance of the testimony.

*Appeal from Buena Vista District Court.*—JAMES DE LAND, Judge.

DECEMBER 31, 1920.

APPELLEE has verdict on claim that appellant was negligent in handling an interstate shipment of a live animal. Defendant appeals.—*Affirmed.*

*Bailey & Edson* and *Charles W. Stockton*, for appellant.

*A. L. Whitney*, for appellees.

SALINGER, J.—I. On March 2, 1918, plaintiff delivered to defendant for interstate shipment a hog, declared to be worth $300. Plaintiff alleges that, at delivery, the hog was healthy, and properly crated. The animal was shipped by various connecting routes, died *en route* somewhere in Texas, and was never delivered to the consignee. Plaintiff asserts that the death was due to negligence; and that, by writing, on due consideration, defendant insured safe delivery to the consignee; and that plaintiff has been damaged in $300. There are denials, and, in addition, there are the following affirmative defenses: (a) Defendant denies that it was in any manner responsible for the death of said hog, and avers that same died from disease, or cause unknown to defendant, and for which it was in no manner responsible; (b) that, by Section 5 of the contract between the parties, it was agreed that defendant should not be liable for the conduct or acts of the animal itself, such as biting, kicking, goring, or smothering, nor be liable for loss or damage arising from the condition of the animal, or resulting from its nature or propensities, and that plaintiff assumed the risks from these; (c) that the shipper released and discharged the defendant from all liability for delivery, injuries to or loss of said animal from any cause whatever, unless such delivery, injury, or loss be caused by the negligence of the defendant, its agents, or employees; and that, though there be such negligence, defendant should be liable only to the extent of the actual damage sustained, and in no event for more than the value of the animal.

II. It is true that, in *Richter & Sons v. American Exp. Co.*, 180 Iowa 1037, *Adams Exp. Co. v. Croninger*, 226 U. S. 491 (33 Sup. Ct. Rep. 148, 154), and in numerous other cases, it is set-

1. CARRIERS: undervaluation for purpose of rate.

tled that a shipper may not undervalue, to obtain a low rate, and, on loss, demand value which, though true value, is greater than the one declared as the basis of the carriage rate obtained. Though this is the law, it is immaterial law. This shipper got his rate on the basis of declaration that the hog is worth $300. That is the sum he is seeking to recover, and was awarded; and the verdict finding the value to be $300 has sufficient support in the evidence.

2-a

, What we have said covers the complaint that the court erred in giving Instruction 1 and Instruction 5, because the animal in question was not classed as "ordinary live stock," but was one kept for breeding purposes, and the further complaint that Instruction 6 errs because the law specifically permits the common carrier to limit its liability, in the case of an animal kept for breeding purposes.

As just said, that would be material if the plaintiff had obtained a rate upon one valuation,—say, the rates upon ordinary live stock,—and was now attempting to recover on a basis not covered by rates. But here is no such case.

III. It is assigned the court erred in sustaining objections to the offer of Exhibit No. 2. On that point, the record is this: The witness Herron, called for defendant, testified that

2. TRIAL: rejection of nonexplanatory exhibit.

he was the messenger who carried the animal, and that "defendant's Exhibit No. 2 is the waybill I had at the time of the shipment. I made the pencil notations on the bill, and turned it over to Mr. Justice, the messenger who took the shipment from there." The offer of this exhibit was objected to as incompetent, irrelevant, and immaterial, "and don't tend to prove any matters in the issue of this case." The ruling was: "Sustained as not having been properly identified."

"Q. Does defendant's Exhibit 2 refer to the shipment of the hog from Marathon to Mt. Calm? (Objected to as not the best evidence. Overruled. Plaintiff excepts.) A. Yes, sir, it is the only waybill I have with reference to that shipment. (Defendant then re-offered Exhibit No. 2, as identified. Same objection as to original offer. Sustained. Defendant excepts.)"

Since the ruling *sustained* objection made, it must be upheld, even if the objection stated is not good, unless no good reason for rejecting the testimony can be found in the record. One objection made to it was that it was immaterial and irrelevant. Assume the objection that it was incompetent for want of identification is not well made: these other objections remain. No one can tell from this record whether this ruling was right or wrong. Nothing indicates why the waybill in the possession

of this messenger should have been received. Nothing indicates that that paper contained anything material or relevant to this inquiry. It was a case where the exclusion can be availed of only upon a profert that brings before the court what it is proposed to accomplish by the introduction of the paper offered.

IV.   It is not seriously disputed that Ruebel Bros. were, in fact, the owners and consignees, though for some reason the contract between the parties exhibits one J. B. Carter to be the shipper. We find no controversy over this was

**3. APPEAL AND ERROR: scope of review: unassigned point.**  made on the trial. And trial seems to have been proceeded with on the theory that these plaintiffs were the real parties in interest. It is true that, as one ground of the motion to direct verdict, it was stated:

"Plaintiff has not shown a right to recover in this case. Plaintiff is not the real party in interest, as disclosed by the contract; that the consignee is not shown to have released any right that he might have for a right to recover for any loss on this shipment; and that plaintiffs do not disclose that they reserved any rights, as between them and the party to this contract, to demand any damages for and on account of the failure of the hog to arrive at his destination, and inasmuch as the contract shows that J. W. Carter is designated as the shipper, he is the only man who has been damaged in this case under this contract.''

But the errors relied on for reversal make no reference to this point, beyond the blanket complaint that it was error to overrule the motion of defendant to direct verdict ''upon the grounds set out in the said motion'' (which are distinct and very numerous). No reference whatsoever is made to it in the brief points. No mention thereof is made in the argument *in extenso*. It is not mentioned in the exceptions to instructions taken before motion for new trial was filed.

We shall not disturb the judgment for lack of standing of the plaintiffs.

V.   The brief and argument for the appellant has numerous complaints to the effect that the court refused to submit certain stated matters. Nothing may be found in the exceptions taken, or in the error points stated, which asserts a failure to give any instruction or to submit any theory. The ex-

ceptions and the error points, so far as they deal with the charge,

4. APPEAL AND ERROR: insufficient reservation of grounds. confine themsleves to complaints of instructions that were *given*. They nowhere predicate complaint upon omission to instruct. The argument for appellant confuses a *failure* to instruct with a *refusal* to instruct. In the last analysis, the complaints assert nothing but mere paucity. Since no instructions were offered, that complaint is not tenable.

In this connection, it may be noted that some of the complaints aforesaid have reference to failures on part of the court,

5. APPEAL AND ERROR: harmless error: failure to specify negligence. in stating the issues, to set forth some of the negligences and misbehavior on the part of defendant, asserted by plaintiff. Surely, defendant was not prejudiced, whatever might be said by his adversary, had it been defeated, because the court omitted to present some of the accusations which plaintiff had lodged against defendant.

VI.   Section 5 of the contract made by these parties provides that defendant shall not be liable for the conduct or acts of animals to themselves or to each other, such as biting, kicking,

6. CARRIERS: instruction to disregard contract: harmless error. goring, or smothering, nor for loss or damage arising from the condition of the animals themselves, or which results from their nature or propensities. Instruction 6 is complained of because it charged as follows: This defendant common carrier "cannot limit its liability as an insurer of the safe transportation and delivery of live stock entrusted to it, except to provide that it shall not be liable for loss or injury occasioned by the act of God, the public enemy, or resulting from the disposition, nature, or propensities of the live stock transported, or resulting from the acts of plaintiffs themselves." Immediately following this quoted statement, the jury was further told that the contract provision quoted had no binding force or effect as between these parties; that it in no manner affects the right of the plaintiff to recover in this action; and that the jury should, therefore, wholly disregard said contract provision. The reason why this was instructed was, however, also stated. The instruction stated that this was said to the jury because, *without any con-*

*tract,* the defendant has the benefit of such exemption by virtue of existing law. Most clearly, no injury was suffered by the defendant from an instruction which told the jury that it should disregard a contract containing specified exemptions, because such contract was immaterial, in that, without it, the defendant was exempted from everything against which said portion of its contract protected it.

If there was error, it does not consist of depriving the defendant of whatever rights said contract provision gave it, but of depriving it of some contract exemption which the law would not give except on contract.

But immediately following the exemption from propensities, etc., the contract provided that:

"The shipper hereby releases and discharges the express company from all liability for delay, injuries to or loss of said animals from any cause whatever, unless such delay, injury, or loss shall be caused by the express company, or by the negligence of its agents or employees."

7. CARRIERS: nonallowable contract exemption.

If this provision is to be treated as being *ejusdem generis,* and merely a blanket cover for injuries due from vicious propensities, etc., then telling the jury to disregard this blanket provision is also harmless. For, on the doctrine of *ejusdem generis,* this blanket clause is but a repetition of the specific contract provision, and is covered by the explanation that it should be disregarded, because the law gives all that the blanket clause does. But if, on the other hand, this blanket provision is claimed to be something additional, something that does not limit itself to the class of exemptions specifically set forth in the contract, and that it is a blanket release against liability from injuries or loss "from any cause whatever" (and we hold it is not intended to be that), then such stipulation would be void because a violation of public policy. On such construction, it would be an attempt on part of a common carrier to relieve itself from its public duties. The shipper and the carrier do not stand on an equal footing. The shipper must have his goods transported. Usually, he is not in position to employ one public carrier if another one declines to take the shipment, or attaches unreasonable conditions to receiving it. If such blanket

stipulations were permissible, the carrier could, by indirection, relieve itself from the duty it owes the public, by attaching conditions to the performance of that duty which could not be accepted without ruining the shipper. It would, in many instances, accomplish an assent upon compulsion. The carrier is not permitted to do this. *Little Rock & F. S. R. Co. v. Cravens,* 57 Ark. 112 (18 L. R. A. 527); *Railroad Co. v. Lockwood,* 84 U. S. 357; *Michigan Cent. R. Co. v. Hale,* 6 Mich. 243, 258; *Little Rock & F. S. R. Co. v. Eubanks,* 48 Ark. 460; *Missouri Pac. R. Co. v. Fagan,* 72 Tex. 127 (2 L. R. A. 75); 10 Corpus Juris 123; *Adams Exp. Co. v. Scott,* 113 Va. 1 (73 S. E. 450); *Liverpool & G. W. S. Co. v. Phenix Ins. Co.,* 129 U. S. 397 (9 Sup. Ct. Rep. 472); *Southern Exp. Co. v. Caldwell,* 88 U. S. 264, 266; *New Jersey Nav. Steam Co. v. Merchants' Bank,* 47 U. S. 343, 382; *York Co. v. Central Railway,* 70 U. S. 107, 112. It follows that, in telling the jury to disregard the exemption distinctly enumerated in the contract, there was no error, because the instruction declared, and it is the law (*Boehl v. Chicago, M. & St. P. R. Co.,* 44 Minn. 191 (46 N. W. 333), that the defendant had the benefit of the stipulated exemptions though no contract existed; and that it was not error to include therein the blanket provision of the contract, because, if that was but an amplification of the enumerated exemptions, the exclusion of the blanket provision was not erroneous, and because if, on the other hand, the blanket provision is substantive and distinct, it was not error to tell the jury to disregard it, because such provision was unenforcible for being violative of public policy.

It is appropriate to say, in passing, that we find no exception that so much as intimates that while, as to the things enumerated, the law does give all that the contract does, it was error to instruct that the contract could be disregarded because this contract gave some things which the law did not give. It is just such contentions as this that the legislature had in mind in passing Chapter 24 of the Acts of the 37th General Assembly, and which explains and justifies the construction of that act of assembly found in *State v. Gibson,* 189 Iowa 1212, and in *Anthony v. O'Brien,* 188 Iowa 802.

VII. There is complaint that the burden of proof was misplaced, and that so, defendant was erroneously made an in-

surer. It is unnecessary to consider more than the complaint
made of Instruction 7 given. That instruction
is the summing up of the attitude of the court,
and, if it was not error to give it, neither was it
error to give others complained of, on the same line. That in-
struction charges that, under the admitted facts, there is but
one question to decide, and that it may be decided by the jury,
if it will ask itself:

8. CARRIERS: bur-
den of proof.

"Has the defendant proven by a preponderance of the evi-
dence that the death of the hog in controversy was worked by an
act of God, the public enemy, or did it result from the disposi-
tion, nature, or propensities of the hog itself?"

The jury is told that, if it answer this question in the affir-
mative, the verdict should be for the defendant, and if it an-
swered in the negative, the verdict should be for the plaintiff.
Beyond doubt, it is the law that, where stock is delivered to the
carrier in good condition, and the shipper does not accompany
same, and the stock is found in bad condition when it reaches
its destination, this proves *prima facie* a cause of action, and,
if not met, authorizes a recovery by plaintiff. *Gilbert Bros. v.
Chicago, R. I. & P. R. Co.*, 156 Iowa 440; *McCoy v. K. & D. M.
R. Co.*, 44 Iowa 424; *Chapin v. Chicago, M. & St. P. R. Co.*, 79
Iowa 582, 585. When this prima-facie showing is met, the bur-
den shifts, and it is for the defendant to show that the injury
was due to inherent vice or propensities of the animal shipped.
*Boehl v. Chicago, M. & St. P. R. Co.*, 44 Minn. 191 (46 N. W.
333); *Illinois Cent. R. Co. v. Word*, 149 Ky. 229 (147 S. W.
949). This rule rests on the doctrine that, where the shipper
does not accompany the shipment, the defendant alone has
knowledge, and therefore the duty of using that knowledge in
disproof of the prima-facie case made. The rule rests also upon
the doctrine that agreements of exemption on account of vice
and the like create an exception from liability, a special con-
tract, without which the carrier would be liable as an insurer;
and that, if it wishes to save itself by urging the contract excep-
tion, it must, therefore, by proof bring itself within the excep-
tion. The causes supporting what has just been stated are too
numerous to be cited *in toto*. We select, as to having burden
because possession of special knowledge, *Cincinnati, N. O. & T.*

*P. R. Co. v. Greening,* (Ky.) 100 S. W. 825; *Grieve v. Illinois Cent. R. Co.,* 104 Iowa 659, 664; *Gilbert Bros. v. Chicago, R. I. & P. R. Co.,* 156 Iowa 440, 449; *Swiney v. American Exp. Co.,* 144 Iowa 342, 346: that the special agreement at bar is an exception, and is within the rule where the defendant has special knowledge, *Boehl v. Chicago, M. & St. P. R. Co.,* 44 Minn. 191 (46 N. W. 333); *Mosteller v. Iowa Cent. R. Co.,* 153 Iowa 390; *Hanley v. Chicago, M. & St. P. R. Co.,* 154 Iowa 60, at 63; *Louisville, C. & L. R. Co. v. Hedger,* 72 Ky. 645 (15 Am. Rep. 740); *Colsch v. Chicago, M. & St. P. R. Co.,* 149 Iowa 176, 183; *Louisville & N. R. Co. v. Wathen,* (Ky.) 49 S. W. 185; *Louisville & N. R. Co. v. Harned,* (Ky.) 66 S. W. 25; *St. Louis & S. F. R. Co. v. Wells,* 81 Ark. 469 (99 S. W. 534); *Adams Exp. Co. v. Bratton,* 106 Ill. App. 563; *Winn v. American Exp. Co.,* 159 Iowa 369, 373; *Wilke v. Illinois Cent. R. Co.,* 153 Iowa 695; 10 Ruling Case Law 897, and cases cited; 10 Corpus Juris 137, and cases cited: as to the proposition that the agreement here states an exception without which the defendant would be an insurer, *Western R. Co. v. Harwell,* 91 Ala. 340 (8 So. 649); *Boehl v. Chicago, M. & St. P. R. Co.,* 44 Minn. 191 (46 N. W. 333); *St. Louis S. R. Co. v. Ray,* (Tex.) 127 S. W. 282; *Southern Exp. Co. v. Fox,* 131 Ky. 257 (117 S. W. 270); *McCoy v. K. & D. M. R. Co.,* 44 Iowa 424; *Colsch v. Chicago, M. & St. P. R. Co.,* 149 Iowa 176, 183; *New Jersey Nav. Steam Co. v. Merchants' Bank,* 47 U. S. 343; *Gilbert Bros. v. Chicago, R. I. & P. R. Co.,* 156 Iowa 440, 448; *Walker v. Transportation Co.,* 70 U. S. 150; *Railroad Co. v. Lockwood,* 84 U. S. 357; *Liverpool & G. W. S. Co. v. Phenix Ins. Co.,* 129 U. S. 397 (9 Sup. Ct. 472); *York Co. v. Central Railway,* 70 U. S. 107, 112; *Swiney v. American Exp. Co.,* 144 Iowa 342, 344; Hutchinson on Carriers, Section 1357; *Missouri Pac. R. Co. v. Harris,* 67 Tex. 166 (2 S. W. 575); *Terre Haute & L. R. Co. v. Sherwood,* 132 Ind. 129 (31 N. E. 781); *Inman v. South Carolina R. Co.,* 129 U. S. 128 (9 Sup. Ct. Rep. 249); *Southern Exp. Co. v. Caldwell,* 88 U. S. 264, 267.

VIII.   It is contended that, even if the carrier may be said to have had the burden, it has discharged the same, as matter of law.   The argument is that it appears "without dispute" that the employees of the defendant used every care that reason de-

manded.  Evidence is not always undisputed though the state-
ment of one witness is not contradicted by the
statement of another.  Though these employees
testify that they used due care, and testify to
what they did and omitted to do, and though no witness clashes
with it, still the law raises a conflict between this testimony and
the evidentiary inference arising from the fact that the animal
was sound when delivered to the carrier, and was not sound at
destination, or before reaching destination.  This situation still
leaves it a jury question whether the injury resulted from vice
or any of the other excepted conditions.  That is the holding in
many of the cases that have already been cited.  We may concede
the jury could have found that the death was due to some of the
excepted causes.  But it does not follow that it was bound to so
find, even though there was affirmative evidence that defendant
exercised due care and diligence at all times.  And the testi-
mony is not all one way, even if it were assumed that its being
so would discharge the burden of defendant, as matter of law.
The jury did have the fact that the animal was in exclusive
charge of the carrier; that it was in sound condition and ade-
quately crated when delivered to it; that the crate had sufficient
room, and had four boards nailed crosswise across the top.  It
could find that the crate gave ample room for the animal to
lie down and be at ease; find that, when the crate arrived at
Parsons, Kansas, it had no top; that the slats near the bottom
of it had been loosened and pushed out, and therefrom infer
that there had been some rough handling or shaking.  It was
even possible to find that there had been a change of crates,
because there was evidence from which it could be found that,
when the crate arrived at Parsons, it appeared to be too small,
and that the flesh of the animal protruded in the opening be-
tween the slats.  The jury could find that, the weather being
warm, that the hog was panting, fretting, and puffing to such
an extent as to attract the attention of the employees of defen-
dant, and to advise them that the condition of the animal was
unusual; and that yet nothing was done, except to water the ani-
mal, which watering was done but three times between Parsons,
Kansas, and Dallas, Texas.  It could be found that one messen-
ger employed by defendant thought the animal was probably

*9. CARRIERS: overthrowing prima-facie cause of action.*

in danger, and reported that fact to the agent at Dennison, Texas, but that no one wired ahead for someone competent to deal with swine diseases, and that the animal was neither unloaded nor taken out of the crate, which, to all appearances, had become too small to hold it comfortably.

In *Swiney v. American Exp. Co.*, 144 Iowa 342, 346, it is said of *Chapin v. Chicago, M. & St. P. R. Co.*, 79 Iowa 582, that an instruction involved in that case to the effect that the carrier could exculpate itself from liability for injury to a shipment of live animals by proof of reasonable care on its part, was more favorable to the defendant than it was entitled to. And in *Cincinnati, N. O. & T. P. R. Co. v. Greening*, (Ky.) 100 S. W. 825, the court said, among other things:

"The evidence is uncontradicted that, when the stock was delivered to the carriers, * * * they were in first class condition; when they were received by the shipper at Atlanta, Georgia, they were bruised, cut, starved, and otherwise greatly injured. Neither appellee nor any person representing him accompanied the stock. They were in the exclusive care and custody of the carrier from the time they were received until their delivery, and, under circumstances like these, the carrier will not be exonerated from liability merely by introducing its employees to show that it was not guilty of any negligence in the transportation."

8-a

In this case, the pleader limited himself to stating a prima-facie case, to wit, delivery in sound condition and failure to deliver to consignee in like condition. Therefore, we have no occasion to consider the cases where, instead of so contenting himself, the plaintiff pleaded specifically: as, for instance, where he declares that specified mishandling caused the injury, or where he asserts that the animal, when delivered to the consignee, was sick of a specified disease. See *Swiney v. American Exp. Co.*, 144 Iowa 342, 344; *Winn v. American Exp. Co.*, 159 Iowa 369, 373; *Gilbert Bros. v. Chicago, R. I. & P. R. Co.*, 156 Iowa 440, 443; *Peterson v. Chicago, M. & St. P. R. Co.*, 19 S. D. 122 (102 N. W. 595); *Quinby v. Union Pac. R. Co.*, 83 Neb. 777 (120 N. W. 453); *Allen Co. v. Mobile & O. R. Co.*, 102 Miss. 35 (58 So. 710); *St. Louis & S. F. R. Co. v. Brosius*, 47 Tex. Civ. App. 647 (105

S. W. 1131) ; *Cleve v. Chicago, B. & Q. R. Co.,* 84 Neb. 158 (120 N. W. 959) ; *Washington Horse Exch. v. L. & N. R. Co.,* 171 N. C. 65 (87 S. E. 941) ; *Illinois Cent. R. Co. v. Word,* 149 Ky. 229 (147 S. W. 949). Where such specific allegations are made the basis of the cause of action stated, we may assume it may well be held that the plaintiff, having elected his ground of recovery, must prove his case as alleged. It may well be that where, for instance, the petition states that, on delivery, the animal was suffering from pneumonia, plaintiff may not recover merely by showing that he delivered same to the carrier in sound condition. It may well be that, where he pleads the injury was caused by rough handling of the animal or the car in which it was loaded, that he cannot make out a case merely by showing delivery to the carrier in sound condition. As already indicated, we have no concern with any of these matters in this case, because this petition contented itself with stating no more than initial delivery in sound condition, and death *en route.*

True it is also that, on the evidence adduced by the defendant, the jury could find that, balancing the so-called presumption from original delivery in sound condition and failure to deliver in like condition with the evidence for the defendant, that the plaintiff had failed to make out his case as a whole by a preponderance. And it is the duty of the jury to find for defendant if, on the whole case, plaintiff has not established negligence by a preponderance. But this is merely the statement of a rule or standard. Declaring such a standard and holding as matter of law that it has or has not been met, are entirely different things; and the fact that such was the duty of the jury in ascertaining preponderances does not enable us to say, as matter of law, that the standard has not been met. See *Fidelity & Dep. Co. v. Mansfield,* 187 Iowa 1250 ; *Turner v. Hartford Fire Ins. Co.,* 185 Iowa 1363 ; *Stilwell v. Stilwell,* 186 Iowa 177 ; *Bean v. Bickley,* 187 Iowa 689. Had there been request for it, the court would have been under duty to tell the jury that it was for it to say whether, on the whole case, plaintiff had, by said presumption, met by the counter evidence, made out by a preponderance that the negligence of defendant had caused the injury complained of. But that that is so does not warrant us in

10. CARRIERS: presumption of negligence versus evidence of care: request for instructions.

saying that the jury should not have returned verdict for plaintiff.—*Affirmed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.